20 F.3d 555
 73 A.F.T.R.2d 94-1659, 62 USLW 2628,
25 Bankr.Ct.Dec. 769,
Bankr. L. Rep. P 75,798
 In re Edward G. VECCHIO and Carol A. Vecchio, also known as
Carol Reed, Debtors.
UNITED STATES of America, Appellant,
v.
Edward G. VECCHIO and Carol A. Vecchio, a/k/a Carol Reed, Appellees.
 No. 1756, Docket 93-5003.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 11, 1993.
Decided April 5, 1994.
 
 Gary D. Gray, Attorney, Tax Div., Dept. of Justice, Washington, DC (Michael L. Paup, Acting Asst. Atty. General, Washington, DC; Gary R. Allen, Janice B. Geier, Attys., Tax Div., Dept. of Justice, Washington, DC; Mary Jo White, U.S. Atty. for the Eastern District of New York, of counsel), for appellant.
 Robert L. Pryor, Mineola, NY (Lynn Welter Sherman, Pryor & Mandelup, Mineola, NY, of counsel), for appellees.
 Before: WINTER, MINER, and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 The United States of America appeals from a judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, Judge ) affirming the decision of the bankruptcy court which held that priority claims under 11 U.S.C. Sec. 726(a)(1) lose their priority status if they are tardily filed. We reverse the judgment of the district court and remand for further proceedings.
 
 BACKGROUND
 
 2
 On September 28, 1988, Edward and Carol Vecchio ("debtors") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. They listed in their schedule of debts two obligations owed to the Internal Revenue Service ("IRS"): one for $792 owed on their 1986 personal income taxes and the other for $25,000 owed as withholding tax due from New Market Manufacturing, Inc. ("New Market"). The debtors were 70% shareholders of New Market, which had filed an earlier Chapter 7 bankruptcy petition in February of 1988.
 
 
 3
 The Clerk of the United States Bankruptcy Court for the Eastern District of New York sent a notice of the filing to all creditors but instructed them that it was unnecessary to file a claim because there were insufficient assets for distribution. On November 22, 1989, the Clerk sent all creditors a notice that payment of a dividend might be possible because assets had been discovered. The notice fixed February 20, 1990 as the deadline for filing proofs of claim.
 
 
 4
 On January 31, 1990, the IRS filed a proof of claim for income taxes for the years 1984 and 1986, totalling $2,203.43. On April 25, 1990 and May 15, 1990, the IRS filed amended claims reasserting the individual taxes due and asserting for the first time a $17,256.51 claim for withholding and FICA taxes owed by New Market in 1987. The claim for withholding and FICA taxes was assessed against debtors individually under 26 U.S.C. Sec. 6672 which attaches personal liability to persons who willfully fail to collect, or truthfully account for and pay over a corporation's withholding and unemployment taxes. The IRS filed its amended claims as unsecured priority claims under 11 U.S.C. Sec. 507(a)(7)(C).
 
 
 5
 The bankruptcy trustee moved in the bankruptcy court to expunge the IRS claim for withholding and FICA taxes as untimely. The IRS responded that a priority claim, which is paid as part of the first-tier of distribution of an estate under 11 U.S.C. Sec. 726(a)(1), does not have to be timely filed in order to retain its priority status. The bankruptcy court refused to afford the IRS's claim priority status under Sec. 726(a)(1) because it was filed late. However, instead of expunging the claim, the court reclassified it as a non-priority claim that would receive third-tier distribution pursuant to Sec. 726(a)(3). The district court affirmed the bankruptcy court's decision, see United States v. Vecchio, 147 B.R. 303 (E.D.N.Y.1992), and this appeal followed.
 
 DISCUSSION
 
 6
 This appeal turns primarily on our interpretation of Sec. 726(a) of the Bankruptcy Code which spells out the order in which the assets of a Chapter 7 bankruptcy estate are distributed to unsecured creditors. It states in relevant part:
 
 
 7
 (a) Except as provided in section 510 of this title [which governs the subordination of claims], property of the estate shall be distributed--
 
 
 8
 (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;
 
 
 9
 (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is--
 
 
 10
 (A) timely filed under section 501(a) of this title;
 
 
 11
 (B) timely filed under section 501(b) or 501(c) of this title; or
 
 
 12
 (C) tardily filed under section 501(a) of this title, if--
 
 
 13
 (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
 
 
 14
 (ii) proof of such claim is filed in time to permit payment of such claim;
 
 
 15
 (3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;
 
 
 16
 (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;
 
 
 17
 (5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and
 
 
 18
 (6) sixth, to the debtor.
 
 
 19
 This statutory scheme thus provides for ordered distribution to tiers of claims in the following manner: first, priority claims; second, unsecured claims that were either timely filed or tardily filed where the creditor did not have proper notice of the bankruptcy but was able to file in time to permit payment; third, tardily filed unsecured claims where the creditor did have proper notice or did not have proper notice but failed to file in time to permit payment; fourth, claims in the nature of fines, penalties, and forfeitures relating to punitive damages; and fifth, claims for appropriate interest. Any remaining assets revert to the debtor.
 
 
 20
 Claims in the first tier are the priority claims found in Sec. 507 of the Bankruptcy Code. The IRS argues that its claim for withholding and FICA taxes falls under Sec. 507(a)(7)(C), which refers to "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity," and should therefore receive first-tier distribution pursuant to Sec. 726(a)(1). The trustee does not dispute the priority status of an IRS claim for withholding and FICA taxes under Sec. 507 or that the claim asserted by the IRS in this case falls within that category. Rather, the trustee argues that because the claim was untimely, it should be subordinated to the third tier and treated as an unsecured claim that was tardily filed after the creditor received proper notice of the bankruptcy.
 
 
 21
 We believe that the trustee's argument is at odds with the plain language of Sec. 726(a). Section 726(a)(1) accords priority status to claims specified in Sec. 507 without regard to the timeliness of their filing. In sharp contrast, subsections (a)(2) and (a)(3) of Sec. 726 categorize non-priority unsecured claims into those that are timely filed, those that are tardily filed where the creditor did not have proper notice of the bankruptcy, and those that are tardily filed where the creditor received proper notice of the bankruptcy. Thus, Congress plainly knew how to distinguish between timely and tardily filed claims, yet did not make that distinction for claims filed under Sec. 507. The absence of a timeliness distinction in Sec. 726(a)(1) strongly suggests that this subsection encompasses all priority claims whenever filed.
 
 
 22
 Legislative history mirrors this reading of Sec. 726(a). Explaining how this statute orders distribution of an estate, the House and Senate Reports both state as follows:
 
 
 23
 First, property is distributed among priority claimants, as determined by section 507, and in the order prescribed in section 507. Second, distribution is to general unsecured creditors. This class excludes priority creditors and the two classes of subordinated creditors specified below. The provision is written to permit distribution to creditors that tardily file claims if their tardiness was due to lack of notice or knowledge of the case. Though it is in the interest of the estate to encourage timely filing, when tardy filing is not the result of a failure to act by the creditor, the normal subordination penalty should not apply. Third distribution is to general unsecured creditors who tardily file.
 
 
 24
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 383 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6339; S.Rep. No. 989, 95th Cong., 2d Sess. 97 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5883. Although this history does not specifically address whether Sec. 726(a)(1) claims retain their priority status even if untimely filed, it draws no distinction between priority claims that are timely or tardily filed while doing so with regard to general unsecured claims. Moreover, it explicitly states that priority claims filed under Sec. 507 are "exclude[d]" from the second tier of distribution. Finally, it describes third-tier claims as those belonging to "general unsecured creditors," a class which, by definition, does not include either secured creditors or priority creditors. This history thus bolsters our conclusion that Sec. 726(a)(1) grants priority claims first-tier distribution regardless of when they were filed.
 
 
 25
 The trustee asserts that the IRS's claim cannot fit within the first tier because it was untimely filed. But if not in the first tier, where does it belong? The claim is specifically foreclosed from the second tier because subsection (a)(2) expressly excludes "a claim of a kind specified in paragraph (1)." The legislative history confirms that the second tier "excludes priority creditors." H.R.Rep. No. 595, at 383; S.Rep. No. 989, at 97, 1978 U.S.C.C.A.N. at 5883, 6339.
 
 
 26
 Recognizing this limitation, the trustee is forced to argue that the IRS's claim should be paid out in the third tier because a tardy priority claim is not excluded from subsection (a)(3)'s description of "any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection." However, this same logic of including whatever is not specifically excluded would also require us to include in the third tier late-filed claims for fines, penalties, forfeitures, punitive damages, and the like. Such penalty claims normally fall within the fourth tier, under subsection (a)(4). Application of this logic would thus lead to the absurd result that late-filed penalty claims would be paid under subsection (a)(3) before timely filed penalty claims paid under subsection (a)(4).
 
 
 27
 The trustee's interpretation would lead to another anomalous result where priority claims are filed late because the priority creditors lacked notice of the bankruptcy. The trustee would relegate such claims to the third tier regardless of whether they were filed in time to permit payment. However, the statute provides that general unsecured claims that are filed late because the claimants lacked notice are paid out in the second tier as long as the claimant files in time to permit payment. The outcome of the trustee's incongruous scheme is that general unsecured claims would be paid ahead of similarly situated priority claims.
 
 
 28
 The trustee argues that in order to achieve priority status, a claim must be "allowed," and to be allowed, it must be timely filed. He points to Sec. 507(a), which uses the term "allowed" when identifying subcategories of priority claims, and to Rule 3002 of the Federal Rules of Bankruptcy Procedure, which appears to provide that claims must be timely filed in order to be allowed. Rule 3002 states in part (a) that "[a]n unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim of interest to be allowed" and in part (c) that "[i]n a chapter 7 liquidation ... a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to Sec. 341(a) of the Code." The trustee asserts that when read together, these two parts of Rule 3002 impose upon the IRS an obligation to file its proof of claim in a timely manner, and that the rule should be strictly construed as a statute of limitations. The trustee maintains that if priority claims are not subject to bar dates, the administration of a debtor's estate will be upset because trustees will be unable to determine with certainty the number and amount of priority claims. This argument persuaded both the bankruptcy and district courts to strip the IRS's untimely filed Sec. 507 claim of its priority status under Sec. 726(a)(1).
 
 
 29
 However, this argument based upon the Bankruptcy Rules ignores the above-referenced provisions of the current Bankruptcy Code that provide that claims can be both allowed and tardily filed, and do not distinguish priority claims by the timeliness of their filing. Nowhere does the trustee account for the language in subsections (a)(2) and (a)(3) of Sec. 726 which expressly refers to "allowed" claims that are "tardily filed" and, indeed, orders their payment. Plainly, the scheme set forth in Sec. 726(a) imposes no threshold requirement of timely filing for a claim to be "allowed" and thus eligible for payment. The trustee's argument also ignores the fact that in Sec. 502 of the Bankruptcy Code, the section expressly governing the disallowance of claims, eight specified grounds for disallowance are set forth and untimeliness is not among them. Moreover, Sec. 501 of the Bankruptcy Code addresses the conditions for the filing of proofs of claim without imposing a timeliness requirement.
 
 
 30
 Therefore, to the extent Rule 3002 suggests that a late filed claim must be disallowed, it is inconsistent with the text of Secs. 726, 502, and 501. Rule 3002 was derived from the former Rule 302, applicable under the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544. Section 57(n) of the former Bankruptcy Act specifically disallowed claims not filed within six months after the first meeting of creditors, see 11 U.S.C. Sec. 93(n) (1976), and Rule 302(a) accommodated this statutory requirement by providing that a claim had to be filed within the six-month period in order to be allowed. The current Bankruptcy Code contains no provision comparable to former Sec. 57(n) disallowing late claims. With its statutory underpinning removed and because it now contravenes Sec. 726(a) and other Code provisions, a rule of procedure that disallows claims for untimeliness cannot stand. See In re Gullatt, 164 B.R. 279, (Bankr.M.D.Tenn.1994); In re Hausladen, 146 B.R. 557, 559-61 (Bankr.D.Minn.1992) (both discussing tensions between Rule 3002 and the Bankruptcy Code).
 
 
 31
 While we do not accept the trustee's argument based on Bankruptcy Rule 3002, we note that even if we did, it would not lead to the result reached by the bankruptcy and district courts. A claim that is disallowed under Rule 3002 would have to be completely expunged, not simply subordinated. The courts' subordination of the IRS's "disallowed" claim to the third tier of distribution is also inconsistent with subsection (a)(3)'s identification of claims to be paid under its proviso as "allowed" claims. Neither the trustee nor the lower courts explain how their concept of allowance can be applied to exclude as "disallowed" a claim from subsection (a)(1) but reinclude it as an "allowed" claim under subsection (a)(3).
 
 
 32
 We disagree as well with bankruptcy courts in other jurisdictions that have subordinated priority claims to the third tier of distribution based on the tardiness of their filing. See IRS v. Ulrich (In re Mantz), 151 B.R. 928, 930-31 (9th Cir. BAP1993); In re Elec. Management, Inc., 133 B.R. 90, 92 (Bankr.N.D.Ohio 1991); In re Mayville Feed & Grain, Inc., 123 B.R. 245, 246-47 (Bankr.E.D.Mich.1991). These courts have also read a timeliness requirement into Sec. 726(a)(1) despite the absence of such language in that provision or in others in the Code, and have failed to address the inconsistencies that arise as a result of their narrow reading of Sec. 726(a)(1) to exclude late filed priority claims, their broad reading of Sec. 726(a)(3) to include late filed priority claims, and their construction of Rule 3002 to permit subordination and not disallowance of such claims.
 
 
 33
 Our reasoning is consistent with the construction of Sec. 726(a) set forth by the Sixth Circuit in United States v. Cardinal Mine Supply, Inc., 916 F.2d 1087 (6th Cir.1990). That case presented a situation where the IRS filed a tardy claim because it did not receive notice of its need to file. In analyzing whether the claim should be subordinated, the court observed that:
 
 
 34
 The language of section 726 does not itself bar tardily filed priority claims. Subsection (a)(1) merely provides that the order of distribution of priority claims will be the order specified in section 507. This subsection makes no distinction between tardily filed and timely filed priority claims or between tardily filed claims where the priority creditor had notice or had no notice.... There are valid reasons for permitting all tardily filed priority claims to be paid whether or not the creditor had notice.... Congress has chosen to place certain taxes in the privileged category. Congress has expressed itself that these claims are to be paid first. Since their priority is set in the statute, it is reasonable that that priority is more important than whether they were tardily filed either because they had received no notice of the bankruptcy or for some other reason.
 
 
 35
 916 F.2d at 1091. The court concluded, based in part on its interpretation and in part on due process and equity concerns, that the IRS's claim retained its first priority status under Sec. 726(a)(1). Although the Sixth Circuit has subsequently read Cardinal Mine as a case dealing only with priority creditors who lacked notice, see IRS v. Century Boat Co. (In re Century Boat Co.), 986 F.2d 154, 158 (6th Cir.1993), the force of its interpretation of Sec. 726(a) applies to priority creditors with notice as well. See also In re Rago, 149 B.R. 882, 886 (Bankr.N.D.Ill.1992); In re Horner, [1991-92 Transfer Binder] Bankr.L.Rep. (CCH) p 74,324, at 77,445, 1991 WL 353297 (Bankr.N.D.Cal. Sept. 21, 1991); In re MacLochlan, 134 B.R. 2, 3-4 (Bankr.N.D.Ohio 1991).
 
 
 36
 We accept, as did the court in In re Rago, that our straightforward reading of Sec. 726(a) results in no penalty for priority creditors who, with notice of the bankruptcy, fail to file their claims within prescribed deadlines. See In re Rago, 149 B.R. at 888-89. To be sure, the logic of our reading of Sec. 726(a) leads to the conclusion that first priority payment could be accorded even to claims filed after the distribution of the estate's assets. However, we believe that bankruptcy courts can adequately address these concerns through the careful exercise of their discretion over the entry of disgorgement orders. For example, if a priority claim is filed after disbursement of an estate and other creditors would have to return funds in order to pay the priority creditor, the bankruptcy court has discretion over whether to enter a disgorgement order. In such a case, the bankruptcy court could weigh the benefits and burdens of such an order and reach a just result. In addition, bankruptcy courts have authority to subordinate a late filed priority claim under principles of equitable subordination. See id. at 889-90; 11 U.S.C. Sec. 510(c).
 
 
 37
 In this case, the bankruptcy court did not consider whether a disgorgement order was necessary or whether principles of equitable subordination should be applied. We will therefore remand this case to allow the bankruptcy court to consider these issues.
 
 CONCLUSION
 
 38
 Because Sec. 726(a)(1) makes no distinctions regarding the timeliness of priority claims, the courts below erred in reclassifying the IRS's first-tier priority claims under Sec. 726(a)(1) as third-tier claims under Sec. 726(a)(3) on the basis that they were not timely filed. We therefore reverse the judgment of the district court. Congress, of course, may wish to consider whether late filing of all or some priority claims in bankruptcy should be penalized. Such legislation, however, is not part of the judicial function. We remand this case to the bankruptcy court to consider whether the IRS claims should be equitably subordinated and for other proceedings consistent with this opinion.