**In re Richard J. COLE and Birgitta Cole, Debtors.**

**No. 90 B 10109 (TLB).**

United States Bankruptcy Court, S.D. New York.

Nov. 6, 1995.

As Amended Nov. 16, 1995.

Warshaw Burstein Cohen Schlesinger & Kuh, LLP by Donald L. Kuba, New York City, for Successor Trustee.

Hausman and Sunberg by Jason B. Rosenfarb, Stanley J. Hausman, Caldwell, NJ, for Leasing Unlimited Corp.

### DECISION ON MOTION TO COMPEL PAYMENT OF ASSERTED PRIORITY CLAIM

TINA L. BROZMAN, Bankruptcy Judge.

A creditor of these joint chapter 7 debtors which received notice of the bar date but failed to file any proof of claim now asks that I allow its asserted chapter 11 administrative claim as well as its prepetition claim. The case was converted to chapter 7 when the debtors failed to consummate their confirmed plan of reorganization.

### I.

Richard and Birgitta Cole, the debtors, filed a joint voluntary petition for reorganization under Chapter 11 of title 11 of the United States Code on January 16, 1990. Prior to the bankruptcy, the couple had entered into four lease agreements with Leasing Unlimited Corp. ("Leasing") for the use of four vehicles including two BMWs. At the time of the filing, Leasing had an unsecured claim for $2,179.28. *See* Hausman Letter to Charles C. Luetke (June 5, 1992); Hausman Aff. in Support of Mot. at 2. Although the parties make no mention of it, the original schedules annexed to the petition list Leasing's unsecured, undisputed claim at $58,000.[1] The Coles never sought to assume or reject the leases during the administration of the chapter 11 case; nor did Leasing move to compel assumption or rejection of its lease agreements.

Without any elaboration as to the facts entitling it to the relief it seeks, Leasing requests that it be granted an administrative claim[2] of $17,140 on account of the two BMWs, the monthly lease charge for which

was $1,416.58 in the aggregate. Leasing does not explain what happened to the vehicles nor does it allege that the estate used or benefited from the use of the vehicles. However, it is evident from Leasing's attorney's letter dated June 5, 1992, that the $17,140 claim had fully accrued at some point prior to April 22, 1991. In this June 5, 1992, letter, Stanley J. Hausman says, "As to post bankruptcy filing, enclosed please find copy of letter of April 22, 1991, previously sent to you in Peekskill, New York, setting forth the nature and extend [sic] of each liability concerning the 1989 BMW and the 1986 BMW totalling $17,140.00." No additional liability is asserted for the period following the letter of April 22, 1991.

On October 17, 1990, during the pendency of the chapter 11 case, I signed an order fixing a bar date of November 20, 1990, which applied to all administrative claims accruing before November 20, 1990, and all claims as defined in 11 U.S.C. § 101(4) [now 11 U.S.C. § 101(5) ], except those which were not listed as contingent, unliquidated, unknown or disputed on the schedules (with a few other exceptions not here relevant). Although the certificate of service shows that Leasing received notice, Leasing did not file a proof of administrative claim. Leasing was not required to file a proof of claim for the prepetition debt because it was scheduled as undisputed. *See* 11 U.S.C. § 1111(a).

On January 8, 1992, well after Leasing's purported administrative claim had fully accrued, I confirmed the debtors' plan of reorganization.

About six months later I converted the case to a chapter 7 liquidation. The United States Trustee appointed an interim trustee who later succeeded to the position of permanent trustee. In December 1992 an order was issued under my authority and pursuant to Rule 2002(e) notifying creditors that it was unnecessary at that time to file a proof of

---

1. Notwithstanding the original scheduling of the claim, the debtors amended their schedules after the conversion of their case to chapter 7, leaving a blank in the space delineated for the amount of Leasing's claim. *See* Summary of Amended Schedules, Schedule F (Oct. 22, 1992). There is

no proof of service indicating that Leasing was notified of this amendment.

2. Leasing actually asks for a "priority preferential" claim which I take to mean an administrative claim.

claim because it appeared as though there were no assets from which a dividend might be payable. In February 1993 the trustee resigned and the following month a successor trustee was appointed.

August 4, 1993, was set as the bar date for filing proofs of claim in the Chapter 7 case. Once again, Leasing was given notice of the bar date and failed to file a proof of claim. On November 9, 1994, I signed an order discharging the debtors *nunc pro tunc* to August 3, 1993, which notice was duly served upon Leasing. There is no contention that Leasing did not receive notice of the bar date or the discharge order. *See* Leasing Memo. of Law at 2–3. Leasing contends, however, that because a trustee has a duty to provide information to a party in interest under section 704, the successor trustee's failure to give notice of the bar date to Leasing's attorney, who had had some communication with the successor trustee's counsel, forms the basis for Leasing's excusable neglect in failing to file a proof of claim. To this end, Leasing submits a series of letters addressed to the attorney for the debtors in the chapter 11 case, the attorney for the original trustee and the attorney for the successor trustee in which Leasing's attorney, Stanley Hausman, requested information regarding the status of Leasing's claims. *See* Hausman Letter to Charles C. Luetke (June 5, 1992); Hausman Letter to Neil Berger (Aug. 26, 1992); Hausman Letter to Neil Berger (Sept. 29, 1992); Hausman Letter to Neil Berger (July 8, 1993); Hausman Letter to Neil Berger (Jan. 6, 1994). None of these letters was filed with the court.

As these letters show, Mr. Hausman never requested information about the claims bar date. Nor did he file a notice of appearance as permitted by Fed.R.Bankr.P. 2002(g). For the sake of completeness, I note that counsel for the successor trustee responded to Mr. Hausman's January 6, 1994, letter by letter dated January 25, 1994, in which he

advised Mr. Hausman that the determination of administrative expenses had to await resolution of a pending tax issue and that chapter 7 expenses are paid prior to chapter 11 administrative expenses. From that time until this motion was filed with the court on September 8, 1995, a period in excess of a year and a half, Leasing did nothing to ensure its participation in the distribution to be made.

## II.

Leasing contends that because the first trustee made unspecified "assurances" under section 365, he, the successor trustee and the successor trustee's original counsel (later substituted out of the case) are personally liable for the amount to which the debtors were in default at the time of the filing ($2,179.23) as well as the balance incurred following the trustee's asserted assurance of future performance, $17,140.00. *See* Leasing's Memo. of Law at 2. Leasing also contends that the estate is liable for both sums on the theory that the leases were assumed. Conspicuously absent, however, from Leasing's papers is reference to a court order authorizing the assumption of the vehicle leases. Leasing also conveniently omits from its quotation of section 365, which it contends is its authority for being paid, subsection (a) which reads:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, *subject to the court's approval,* may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a) (1994) (emphasis added).

## III.

### A. *The Asserted Administrative Claim*

At first blush there appears to be lurking in this dispute an issue of first impression in this circuit. In *United States v. Vecchio (In re Vecchio),* 20 F.3d 555, 558 (2d Cir.1994),[3]

---

**3.** The Second Circuit decided *Vecchio* prior to the 1994 Bankruptcy Code amendments. Because this case also predates the amendments, the law as discussed in *Vecchio* applies to Leasing's claim. At that time, § 726(a) read in pertinent part:

(a) Except as provided in section 510 of this title [which governs the subordination of

claims], property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

the Second Circuit held that a priority claim, there a tax claim, is entitled pursuant to section 726(a)(1) to priority status regardless of whether the claim was filed prior to the last day to file claims.[4] The Second Circuit did not consider, however, whether this rule is different in a converted case where the priority creditor was required but failed to file a proof of claim during the chapter 11 case and the plan is confirmed. Section 726(a)(1) does not apply in chapter 11.[5] And in the usual case at least, the creditor's underlying claim is extinguished by confirmation of the plan with the debtor's obligation to comply with the terms of the confirmed plan being substituted for the underlying claim. *See, e.g.*, 2 R. GINSBERG, BANKRUPTCY § 13.14(b), *cited in In re Amigoni*, 109 B.R. 341–43 (N.D.Ill.1989). In light of this, it is certainly arguable that *Vecchio* does not control so that the priority creditor who failed to file a required proof of claim in the chapter 11 case is precluded from participating in the liquidation case when the confirmed plan fails. *Cf. In re Benjamin Coal Co.*, 978 F.2d 823 (3d Cir.1992) (because confirmation of plan extinguished administrative debt and substituted for it obligation under plan, creditor with superpriority established pursuant to court order held only a general unsecured claim and had to file proof of claim when case was converted to chapter 7 after debtor defaulted under terms of confirmed plan). There are two added wrinkles here, however. First, the plan was never substantially consummated. And second, the plan itself provided that no discharge would be granted until claimants were paid. *See* Article VIII, paragraph 1 of the confirmed plan ("Payment to claimants of the distribution to be made thereof pursuant to the Plan shall constitute the full settlement, release, discharge and satisfaction of all claims, if any, against the

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in (2)(C) of this subsection; . . .

Rejecting both the bankruptcy and the district courts' conclusion that the late filed priority claim is properly paid in the third tier of § 726, the Second Circuit held instead that § 726(a)(1) accords priority status to claims specified in § 507 without regard to the timeliness of their filing. *Id.* at 557. The trustee in *Vecchio* had argued that this holding would be unfair to creditors where a priority claim is filed after distribution of the estate's assets. In response, the Circuit noted:

we believe the bankruptcy courts can adequately address these concerns through the careful exercise of their discretion over the entry of disgorgement orders. For example, if a priority claim is filed after disbursement of an estate and other creditors would have to return funds in order to pay the priority creditor, the bankruptcy court has discretion over whether to enter a disgorgement order. In such a case, the bankruptcy court could weigh the benefits and burdens of such an order and reach a just result. *Id.* at 560.

Since *Vecchio*, Congress amended § 726(a)(1) to expressly permit distribution on a priority claim "proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section." The Circuit's decision in *Vecchio* is consistent with the 1994 Bankruptcy Code amendment to § 726(a)(1) (except that post-amendment, the late filed priority claim must be filed before the trustee commences distribution in order to be accorded first-tier treatment), leading me to conclude that the law on this point is essentially the same both pre and post amendment—*at least in the Second Circuit. See* note 4 of this decision.

**4.** This issue is a hotly contested one now reaching the circuit courts. Just days ago the Fifth Circuit, in a chapter 13 case, expressly rejected the *Vecchio* reasoning and held that a tardily filed priority tax claim is allowed only as a late unsecured claim entitled to share in any surplus after distribution in full to timely filed claimants. *United States v. Waindel (In re Waindel)*, 65 F.3d 1307 (5th Cir.1995).

**5.** The section does, however, have an effect in chapter 11. To meet the "best interests of creditors test" which is applicable in chapter 11 to any creditor who votes against the plan, the debtor must show that the creditor will receive at least as much as that creditor would receive if the debtor were liquidated under chapter 7.

Debtor." [6]). Whether Leasing could have asserted an administrative claim following the debtors' failure to consummate the plan is beside the point, however, because Leasing is still not entitled to the relief which it seeks, allowance of an administrative claim.

 Whether Leasing's claim is entitled to priority treatment turns on whether, as Leasing asserts, the leases were assumed or, if they were not assumed, on whether the debtors' estate was benefited by the use of the vehicles which are the subject of the leases.[7] I will tackle first the assumption issue.

Section 1123(b)(2) of the Code provides that a plan of reorganization

> may, ... *subject to section 365 of this title,* provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section. (Emphasis added.)

Section 365 of the Code in turn allows a debtor in possession, subject to the court's approval, to assume or reject any executory contract or unexpired lease of the debtor. By virtue of the reference in section 1123(b)(2) to section 365, one gleans that Congress did not intend to render the provisions of the latter a nullity by giving reorganizing debtors carte blanche to assume unspecified leases and contracts free of the obligations of section 365, such as obtaining court approval. As a major treatise explains:

> What is clear is that section 1123(b)(2) does not provide blanket authority to reject or assume executory contracts. Section 1123(b)(2) is subject to section 365 and the trustee's power under section 365(a) to reject [or assume] executory contracts and unexpired leases is not absolute but rather is "subject to court approval." Thus, what the plan proposes with respect to assumption, assignment or rejection of executory contracts is not necessarily what the court will determine to be permissible.

Section 1123(b)(2) is permissive. The plan *may* provide for the assumption or assignment of an executory contract. On the other hand, the contract may "ride through" the plan as unaffected. However a party to the contract may insist that it either be rejected or fully assumed under the plan if the contract has not already been dealt with separately from the plan. Such party has a right to be heard in respect of affirmation or rejection of the contract at the time of the confirmation hearing under section 1128 or prior to such date, in order to assure adequate protection of its interests.

5 L. KING, COLLIER ON BANKRUPTCY ¶ 1123.02 at 1123–20 to 1123–21 (15th ed. 1994).

The obvious flaw with Leasing's argument that its leases were assumed by the debtors is that I never authorized assumption nor had the opportunity to pass on the issue of whether assumption would benefit the estate. *See In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 703 (Bankr.S.D.N.Y.1992) (the option whether to assume an executory contract should only be exercised when it will benefit the estate; it should not extend to situations where the only effect of its exercise would be to prejudice other creditors).

Although Leasing did not articulate its theory, I gather from its citation to *In re Pearson,* a Chapter 13 case in which the debtor had assumed a lease under its plan, that Leasing's proffered panacea is that the leases were assumed pursuant to the plan of reorganization. *See* Leasing Memo. of Law at 2 (citing *In re Pearson,* 90 B.R. 638 (Bankr.D.N.J.1990)). So we turn to the relevant law. The confirmed plan of reorganization in *RAF Fin. Corp. v. Resurgens Communications Group, Inc.,* Civ.A. No. 89–A–1878, 1990 WL 145603 (D.Colo. Sept. 27, 1990), provided:

> Any executory contract or unexpired lease not rejected by the Debtor under this Plan or upon separate motion to the Bankruptcy Court prior to the Confirmation of the Plan, shall be deemed to have been assumed by the Debtor upon entry of the Confirmation Order.

---

6. The plan defined "Debtor" to mean both joint debtors.

7. Although benefit to the estate is an available alternate theory, it is not one which Leasing advances.

The *RAF* Court held that the plan did not constitute an assumption for it did not purport to cure defaults or provide adequate assurance of their cure, the parties never moved to assume the contract at issue, and the bankruptcy court never ordered assumption. The court explained:

> Judicial approval of a motion to assume is mandatory, and if the requirements of § 365 have been met is for the bankruptcy court to determine. The debtor cannot unilaterally decide whether the tests of § 365(b)(1) have or have not been met, and certainly a nondebtor party has no authority to make such a determination. Court approval is an indispensable step in the process of assumption. *Id.* at *4 (citations and internal quotations omitted).

*Cf. Frito–Lay, Inc. v. LTV Stell Co. (In re Chateaugay Corp.),* 10 F.3d 944 (2d Cir.1993) (in concluding that debtors did not receive any postpetition benefit under the leases, the court refused to give effect to global provision in plan purporting to assume all unstated executory contracts or unexpired leases which provision then attempted to classify the leases in question as "non-executory contracts.").

In this case, Article IV of the confirmed plan reads as follows:

> Any and all executory contracts of the Debtor which are not expressly rejected or disaffirmed prior to the confirmation date or are not as of such date the subject of then pending applications to reject or disaffirm *shall be unaffected by the Chapter 11 case* and *shall be deemed to be assumed by the debtor.* The Debtor reserves the right to move for approval or rejection [sic] any such contract pursuant to section 365 of the Code prior to the confirmation date. (Emphasis added.)

This language, although less than a model of clarity, at best purports to preserve Leasing's rights under the leases. Were I to accept the proposition that by simply including generalized language in a plan of reorganization a debtor could effectively assume all unexpired leases without adhering to section 365, still the language in Article VI of the plan fails to accomplish that objective. First, Leasing has submitted no evidence which would lead me to conclude that the leases were executory at the time of plan confirmation. In fact, the only pertinent evidence submitted in support of the claim—a series of letters—indicates that by April 22, 1991, Leasing's claim was fully liquidated. If that is so, then it is logical to infer that the leases did not subsist at the time that the plan was confirmed. Second, the plan purports to deal specifically with executory contracts, but does not mention leases notwithstanding that section 365 distinguishes between executory contracts and leases of personal property. *See, e.g.,* 11 U.S.C. § 365(d)(1) and (2). Third, fairly read, Article VI cannot mean that all executory contracts are assumed because it says they are "unaffected by the Chapter 11 case" and because the next sentence of that paragraph provides that the debtors reserve the right to move to assume or reject up until confirmation.

In light of the foregoing, I conclude that the leases for the two cars were never assumed by the debtors. This does not mean, however, that Leasing would not have an administrative claim for the use of the vehicles by the debtors in possession if the estate were benefited by their use. *See generally In re Chateaugay Corp.,* 10 F.3d at 955 (citing *In re Unishops, Inc.,* 553 F.2d 305, 308 (2d Cir.1977)).

Allowances for administrative expenses are narrowly construed. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 100 (2d Cir.1986) (citing *Joint Indus. Board v. United States,* 391 U.S. 224, 228, 88 S.Ct. 1491, 1493, 20 L.Ed.2d 546 (1968)). The priority embraces only those creditors who perform services that are actual and necessary to preserve the bankrupt estate or that enable it to maintain its business. *See Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.),* 66 F.3d 1091, 1094 (9th Cir.1995); *In re CIS Corp.,* 142 B.R. 640, 642 (S.D.N.Y.1992); *In re Chateaugay Corp.,* 102 B.R. 335, 353–54 (Bankr. S.D.N.Y.1989). The claimant bears the burden of proving that the services it provided were a benefit to the bankruptcy estate. *DAK Indus., Inc.,* 66 F.3d 1091 at 1094; *CIS Corp.,* 142 B.R. at 642. To sustain its burden and thus qualify for administrative priority

the claimant must demonstrate that 1) the claim arose from a transaction with the debtor in possession and 2) it resulted in a direct benefit to the estate. *DAK Indus., Inc.,* 66 F.3d 1091 at 1094; *Chateaugay Corp.,* 102 B.R. at 353; *General Am. Trans. Corp. v. Martin (In re Mid Region Petroleum Inc.),* 1 F.3d 1130 (10th Cir.1993) (holding that mere possession of leased vehicles does not constitute a benefit to the estate for purposes of determining whether to allow claim as an administrative expense).

> One of the goals of Chapter 11 is to keep administrative costs to a minimum in order to preserve the debtor's scarce resources and thus encourage rehabilitation. In keeping with this goal, § 503(b)(1)(A) was not intended to saddle debtors with special post petition obligations lightly or give preferential treatment to certain select creditors by creating a broad category of administrative expenses. The policy behind giving priority to administrative claimants in Chapter 11 proceedings is to encourage creditors to supply necessary resources to debtors post-petition. This policy is diminished where, as here, the creditor is asserting that its administrative claims arise as a result of pre-petition executory contracts for equipment which has not been used by nor been a direct benefit to the estate, as opposed to contracts which are formulated post-petition or serve to benefit the estate post-petition.

*In re Mid Region Petroleum, Inc.,* 1 F.3d at 1134 (internal quotes and citations omitted).

Because Leasing did not even contend that the BMW leases benefited the estate, it is not surprising that Leasing failed to adduce facts demonstrating that it is entitled to an administrative use and occupation claim. *See In re Rhymes, Inc.,* 14 B.R. 807, 808 (Bankr. D.Conn.1981) ("[I]t is well settled that until assumption or rejection of the debtor's lease, the estate is liable only for the reasonable value of the use and occupancy of the property.... The liability for actual use and occupancy is based upon the 'equitable principle of unjust enrichment, rather than the com-

pensation of the creditor for loss to him.'") (citing *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 126 (2d Cir.1960)). Accordingly, the alternative theory for priority payment is as unavailing as the argument which Leasing actually advances for treatment as a priority creditor. The most beneficial result to which Leasing could be held entitled is that it may share in any surplus. *See* 11 U.S.C. § 726(a)(3). But it is unnecessary to determine whether there is any claim at all arising out of the debtors' use of the vehicles because this estate has no surplus to distribute to unsecured late-filed claims.[8]

## B. *The General Unsecured Claim*

 We now turn to the unsecured prepetition claim. Section 502 of the Bankruptcy Code governs allowance of claims. 11 U.S.C. § 502. The section provides in part:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

> (b) ... if such objection to a claim is made, the court, after notice and a hearing ... shall allow such claim ... except to the extent that—

Section 502(b) then sets out eight grounds for disallowing claims. Prior to the 1994 Bankruptcy Code amendments, tardiness was not listed as one of the eight specific grounds for disallowing claims.[9] However, Bankruptcy Rule 3002 says:

> (a) Necessity for Filing. An unsecured creditor ... must file a proof of claim ... in accordance with this rule for the claim or interest *to be allowed,* except as provided in Rules 1019(3), 3003, 3004 and 3005. (Emphasis added.)

A line of cases recognized this seeming inconsistency and reconciled it by determining that: "[S]ection 502 and Rule 3002 are not complementary but independent," concluding that "lateness is not a ground for disallowance under section 502 of the Code." *See, e.g., In re Hausladen,* 146 B.R. 557, 560,

---

8. The trustee filed a Proposed Notice of Distribution on September 8, 1995, which proposes to distribute 11.84% to general unsecured creditors.

9. Pre-amendment law governs the instant dispute.

559 (Bankr.D.Minn.1992) (quotations omitted). In *Hausladen,* several chapter 13 prepetition creditors failed to file proofs of claim within the 90–day time period set by Bankruptcy Rule 3002(c). The trustee unsuccessfully argued that the claims should be disallowed as time-barred. The court concluded that section 502 governed *allowance* of claims, while Rule 3002 governed *treatment* of claims, and held that:

> The rights of tardily filing claim holders in chapter 13 cases are not defined by the Code but rather are controlled by the Chapter 13 plan. *See* 11 U.S.C. § 1322(b)(10). The plan may treat these claims in several ways. The plan may provide that tardily filed claims be paid after timely filed claims are paid in full or for no payment at all. The plan may provide identical treatment for all allowed unsecured claims, regardless of timeliness or for payment at a different percentage than timely filed claims. *Id.* at 560.

The *Hausladen* case was criticized by some. *See, e.g., In re Bailey,* 151 B.R. 28, 30 (Bankr.N.D.N.Y.1993). Nevertheless, the Second Circuit in *Vecchio* echoed some of the reasoning in *Hausladen,* explaining that:

> [I]n § 502 of the Bankruptcy Code, the section expressly governing the disallowance of claims, eight specified grounds for disallowance are set forth and untimeliness is not among them. Moreover, § 501 of the Bankruptcy Code addresses the conditions for the filing of proofs of claim without imposing a timeliness requirement.
>
> Therefore, to the extent Rule 3002 suggests that a late filed claim must be disallowed, it is inconsistent with the text of §§ 726, 502, and 501. Rule 3002 was derived from the former Rule 302, applicable under the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544. Section 57(n) of the former Bankruptcy Act specifically disallowed claims not filed within six months after the

first meeting of creditors, *see* 11 U.S.C. § 93(n) (1976), and Rule 302(a) accommodated this statutory requirement by providing that a claim had to be filed within the six-month period in order to be allowed. The current Bankruptcy Code contains no provision comparable to former § 57(n) disallowing late claims. With its statutory underpinnings removed and because it now contravenes § 726(a) and other Code provisions, a rule of procedure that disallows claims for untimeliness cannot stand. *In re Vecchio,* 20 F.3d 555, 558–59 (2d Cir.1994).[10]

All of this is largely beside the point, however, for both *Hausladen* and *Vecchio* recognize that in a chapter 7 case the treatment of claims is governed by section 726. *Hausladen,* 146 B.R. at 560 ("absent some other basis of disallowance, tardily filed claims are allowed and entitled to distribution if there is enough money; ... while treatment of a claim may be dependent on its timeliness, allowance is not"); *Vecchio,* 20 F.3d at 558 (pointing to the language in section 726(a)(2) and (a)(3) "which expressly refers to 'allowed' claims that are 'tardily filed' and, indeed, orders their payment" and refusing to read a similar timeliness requirement into section 726(a)(1) in the absence of such language).

Unlike in *Vecchio,* we are concerned at the moment with an unsecured claim that is not entitled to priority and thus is governed by section 726(a)(2) or (a)(3) (depending on whether the claimant had notice of the bankruptcy). Because it is undisputed that Leasing had notice of the bankruptcy, section 726(a)(3) controls. So if Leasing retained a claim after confirmation of the plan that claim is allowable, albeit only as a late filed claim entitled to share in the surplus, if any, in the estate.

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan of reorganization discharges

---

10. Intending to overrule *Hausladen* and its progeny, Congress amended section 502 in 1994 adding a new subsection (9) which provides that if an objection to a claim is made, the court shall allow that claim except to the extent:

> proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of

this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide. 11 U.S.C. § 502(b)(9) (1994); *see* 140 Cong. Rec. H10,768 (daily ed. Oct. 4, 1994).

the debtor from any debt that arose before the date of such confirmation whether or not a proof of claim based on such debt was filed or deemed filed, whether or not such claim was allowed, and whether or not the holder of such claim has accepted the plan. 11 U.S.C. § 1141(d)(1). Unless no discharge has been granted at confirmation, once a plan under chapter 11 is confirmed, a creditor can no longer enforce its prepetition, pre-conversion, chapter 11 claims, but rather is limited to the rights granted to it under the plan. 11 U.S.C. § 1141(a)(1994); *see generally In re Benjamin Coal Co.*, 978 F.2d at 826, 827; *Brooks Fashion Stores, Inc. v. Michigan Employment Sec. Comm'n (In re Brooks Fashion Stores, Inc.)*, 124 B.R. 436, 445 (Bankr.S.D.N.Y.1991); *see also In re WF Monroe Cigar Co.*, 166 B.R. 110, 112 (N.D.Ill. 1994) (lien rights); *In re Henderberg*, 108 B.R. 407, 412 (Bankr.N.D.N.Y.1989). As indicated earlier in this decision, this plan provided for the discharge of debt upon its payment under the plan, which payments were not made. Thus, no discharge was granted in the order of confirmation. As a result, at the time the case was converted to chapter 7, Leasing retained its unsecured claim. This does not mean, however, that Leasing is necessarily entitled to share in the chapter 7 estate.

During the chapter 11 case Leasing was not required to file a proof of claim for its general unsecured debt inasmuch as it was scheduled as an undisputed creditor. 11 U.S.C. § 1111(a). However, once the post-confirmation case was converted to chapter 7, pursuant to Fed.R.Bankr.P. 1019(3), Leasing was required to file a proof of claim if it wished to participate in the second tier of distribution under section 726(a)(2). *See* 6 J. QUEENAN, CHAPTER 11 THEORY AND PRACTICE § 32.16 at 32:40 (1994) ("The procedural aspects of post-confirmation conversion are the same as those for conversion prior to confirmation and are covered by Bankruptcy Rule 1019."); *see also In re Benjamin Coal Co.*, 978 F.2d at 826; FED.R.BANKR.P. 1019(2).

Bankruptcy Rule 1019(3) states: "All claims *actually* filed by a creditor in the superseded case shall be deemed filed in the chapter 7 case." FED.R.BANKR.P. 1019(3) (emphasis added). By implication, claims not actually filed in the superseded case are not deemed filed in the subsequent Chapter 7. *See* FED.R.BANKR.P. 1019 advisory committee's note (1987) (changing the law in response to *In re Crouthamel Potato Chip Co.*, 786 F.2d 141 (3d Cir.1986)); *see In re Sea Air Shuttle Corp.*, 168 B.R. 501, 503–04 (Bankr.D.Pa.1994); *see also Lisk Elec., Inc. v. Brandt (In re Fesco Plastics Corp.)*, 908 F.2d 240 (7th Cir.1990); *accord In re Alaska Midwest, Inc.*, 92 B.R. 108, 110 (Bankr. M.D.Pa.1988); *cf. In re Yonkers Professional Hosp.*, 113 B.R. 153, 154, 155 (S.D.N.Y.1990) (finding the bankruptcy court order compelling refiling to be dispositive on issue of whether creditor must refile in converted case); *In re Haugen Constr. Servs., Inc.*, 88 B.R. 214, 217 (Bankr.D.N.D.1988) ("Claims 'deemed filed' in a Chapter 11 case are not filed for purposes of Chapter 7," but finding an informal proof of claim because the creditor participated extensively in the progress of the case), *aff'd on other grounds*, 876 F.2d 681 (8th Cir.1989).

Inasmuch as Leasing never filed a claim in the chapter 11 case, there was no "actually filed" claim to be deemed filed when the case was converted to chapter 7. It is unfortunate that Leasing ignored the notice which it received, which stated, in pertinent part, in capital letters:

YOU ARE HEREWITH ADVISED OF THE OPPORTUNITY TO FILE A CLAIM IN ORDER TO SHARE IN ANY DISTRIBUTION.

A CREDITOR MUST FILE A PROOF OF CLAIM WHETHER OR NOT THE DEBT IS INCLUDED IN THE LIST OF CREDITORS FILED BY THE DEBTOR. THE PROOF OF CLAIM MUST BE FILED ON OR BEFORE AUGUST 4, 1993.

*See* Notice of Possible Dividends and of Time to File Claims in The Chapter 7 Case (May 6, 1993). Not only did Leasing let pass two bar dates, but it failed to move to compel assumption or rejection of its leases [11] or take

---

11. During the chapter 11 phase, Leasing could have moved to compel assumption or rejection of

any other action to assert its rights until more than two years after the chapter 7 bar date had passed.

Leasing's response to the obvious lateness of its claim is that the notice quoted in part above should have been mailed to its counsel, because counsel had communicated with the trustee's and successor trustee's counsel. However, the Federal Rules of Bankruptcy Procedure mandate that all required notices are to be mailed to the creditor unless an authorized agent has *filed* a request providing otherwise. FED.R.BANKR.P. 2002(g). Leasing's counsel has not filed such a request. It is the clerk of the bankruptcy court, not the trustee's counsel, who is charged with the duty of serving the notice of possible dividend. FED.R.BANKR.P. 3002(c)(5). Because Mr. Hausman neglected to file an appropriate notice, the clerk of the court was not apprised that Mr. Hausman represented Leasing and that he wished to be served with relevant notices. Given the clarity of the rules, one cannot accept Leasing's argument, assuming that excusable neglect were a viable theory (more about which will be said below), that the failure to serve notice on its counsel constituted excusable neglect such that Leasing's claim should be considered timely. Indeed, the motion did not contain any affidavit from Leasing attesting to its supposed mistaken belief.

 In any event, excusable neglect cannot be imported into the chapter 7 claims context. It is pursuant to Rule 3002(c) that notices were sent to creditors advising them of the opportunity to file proofs of claim. That rule provides so far as relevant:

In a Chapter 7 liquidation . . .

(5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notices the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

Excusable neglect is not available to a creditor seeking to enlarge the period established by Rule 3002(c) in which to file a proof of its leases pursuant to 11 U.S.C. § 365.

claim in a chapter 7 case, for Bankruptcy Rule 9006 directly prohibits it:

> The court may enlarge the time for taking action under Rule 1007(d), 1017(e), *3002(c)*, 4003(b), 4004(a), 4007(c), 8002, and 9033, *only to the extent and under the conditions stated in those rules.* (Emphasis added.)

*See also Zidell, Inc. v. Forsch (In re Coastal Alaska Line, Inc.),* 920 F.2d 1428, 1432 (9th Cir.1990) (Bankruptcy Rule 3002(c) is peremptory and a bankruptcy court lacks any equitable power to enlarge the time for filing a proof of claim unless one of the six situations in Rule 3002(c) exists).

 The only other possible avenue for relief, which again Leasing did not assert, is that its communications with the trustee's and his successor's counsel constituted an informal proof of claim. To constitute an informal proof of claim, there must be some informal writing filed with the court which is an assertion by the creditor prior to the bar date of his claim against the debtor's estate. *In re Drexel Burnham Lambert Group, Inc.,* 129 B.R. 22, 26–27 (Bankr.S.D.N.Y.1991); *In re W.T. Grant Co.,* 53 B.R. 417, 421 (Bankr. S.D.N.Y.1985). The timely written assertion or pleading *must apprise the court* of the existence, nature and amount of the claim as well as evidence an intent on the part of the claimant to hold the debtor liable for that claim. *W.T. Grant Co.,* 53 B.R. at 421 (citing *Biscayne 21 Condominium Assoc., Inc. v. South Atl. Fin. Corp. (In re South Atl. Fin. Corp.),* 767 F.2d 814, 819 (11th Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); *In re Sambo's Restaurants, Inc.,* 754 F.2d 811 (9th Cir.1985)). Here, Leasing Unlimited did not file anything with the court much less something evidencing an intention to hold the estate liable for any claim. Therefore, Leasing may not rest on an informal proof of claim theory to support its claim. Leasing's remedy, which concededly is less than satisfactory to it, is limited to sharing in any surplus, which, unfortunately, does not exist in this case. *See* 11 U.S.C. § 726(a)(3).

## C. *Shifting Liability to the Shoulders of the Trustee, His Counsel and the Successor Trustee*

 In its memorandum of law Leasing asserts that "the Trustee, Neil Berger [his counsel], and the Successor Trustee are personally liable for the amount to which the debtors were in default at the time of the filing ($2,179.23) as well as the balance incurred following the Trustee's assurance of future performances; $17,140.00." Leasing predicates this novel request for relief on its assertion that those persons who are the object of its ire did not give Leasing's attorney the information which he requested about the status of the case as they were required to do pursuant to section 704(7) of the Code. That section obligates a trustee to furnish such information concerning the estate and its administration as is requested by "a party in interest." Here, Leasing's counsel made no inquiry of either trustee but only of their counsel. Moreover, Leasing itself made no request for information; rather, the request came from an attorney who had not filed a notice of appearance and thus arguably was not a party in interest. More importantly, Leasing's counsel did not ask in any of the letters whether a bar date had been fixed; this may well have been due to his seemingly mistaken belief that Leasing had already filed proofs of claim. *See* Letter of July 8, 1993 addressed to Neil Berger, Esq. ("This letter will confirm that the following claims have previously been submitted on behalf of my client, Leasing Unlimited Corp. as follows: . . . ."). And, of course, Leasing received exactly the notice to which it was entitled. So whereas I do not condone what appears to be Mr. Berger's failure to respond to Leasing's counsel, I can conceive of no grounds on which to impose personal liability on him (or his client) for Leasing's claims. In any event, the notice of motion made absolutely no mention of the claim of personal liability and was not served on Mr. Berger. As for the successor trustee, his counsel responded promptly to the letter which he received from Leasing's counsel. Accordingly, to the extent that the imposition of personal liability is sought, it is denied.

## D. *The Request for Sanctions Against Leasing's Counsel*

 The successor trustee asks that I impose sanctions upon Leasing's attorney pursuant to Fed.R.Bankr.P. 9011. In relevant part the rule provides:

> Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney . . . shall be signed by at least one attorney of record in the attorney's individual name. . . . *The signature of an attorney [ ] constitutes a certificate* that the attorney [ ] has read the document; *that to the best of the attorney's [ ] knowledge, information, and belief formed after a reasonable inquiry it is well grounded in fact and is warranted by existing law;* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the estate. . . . If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

FED.R.BANKR.P. 9011(a) (emphasis added). Leasing's counsel exhibits a stunning unfamiliarity with the law which is determinative of his motion. His memorandum of law, filed only after I insisted upon it notwithstanding that Local Rule 13(b) requires the filing of a memorandum with a motion, sheds little light on his theories. However, it does manage to cite to the right statute regarding the argument on assumption, section 365, although counsel ignored a critical subsection. With respect to the law on excusable neglect, whereas the heavy weight of authority is to the effect that it is unavailable in the chapter 7 claims context, there are a couple of cases which hold otherwise. Moreover, those uninitiated to the bankruptcy practice can fall into the trap of thinking that the chapter 11 cases in which excusable neglect is available are good authority as well in the chapter 7

cases. The argument regarding the personal liability of the trustees is misguided, but Bankruptcy Rule 9011 is not meant to chill the enthusiasm of attorneys in arguing new theories. Accordingly, despite the poor quality of counsel's written submissions, I decline to grant sanctions.

### Conclusion

Leasing's motion for (i) allowance of an administration claim; (ii) payment of its general unsecured claim along with timely filed claims; and (iii) imposition of personal liability on the trustee, his counsel and the successor trustee is denied. The successor trustee's request for sanctions is denied as well.

SETTLE ORDER consistent with this decision.