### In re SWALLEN'S, INC., Debtor.

### Bankruptcy No. 95–14476.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

May 22, 1997.

Thomas W. Coffey, Reuel D. Ash, Cincinnati, OH, for Debtor.

Alan J. Statman, Cincinnati, OH, for Fifth Third Bank.

## DECISION ON REQUEST OF FIFTH THIRD BANK FOR ADMINISTRATIVE EXPENSE

BURTON PERLMAN, Bankruptcy Judge.

This is a Chapter 11 case in which the debtor operated a retail business offering for sale a variety of products. Prior to filing its bankruptcy case, debtor had entered into a contractual relationship with the Fifth Third Bank ("Bank") whereby customers of the debtor could be extended credit in order to finance purchases from the debtor. Bank now seeks to obtain payment as an administrative expense of certain charge-backs which Bank has given pursuant to the contract.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A) and (B).

The facts giving rise to the present controversy are not in dispute. The agreement between the parties to which we have alluded was dated December 11, 1991, and was entitled Revolving Credit Card Plan Processing Agreement (hereafter "Agreement"). The parties operated under the Agreement as in a usual credit card arrangement, except that the credit card could only be used for purchases by the cardholder from the debtor. Such an arrangement may be referred to as one for a private credit card. Thus, the Agreement contemplated the following mode of operation: some of debtor's customers held credit cards which could be used for purchases of goods from the debtor; when a purchase was made on such a credit card, the credit card drafts were submitted to the Bank for payment; the Bank then paid debtor the amount of the draft minus a processing fee; the bank then collected the account from the customer. Customers of debtor could use such credit cards not only to purchase products and services from the debtor, but also extended warranties on appliances purchased from debtor. "Charge-backs" were contemplated by the Agreement in the event of certain defaults in payment by debtor's customers using such credit cards, such defaults occurring, e.g., where a customer received defective goods, or where the customer returned goods to debtor. When these defaults occurred, the Bank would not be able to collect from the customer though the Bank had already paid the debtor on the account. Under the Agreement, the Bank was entitled to look to the debtor for reimbursement of such payment. The term "charge-backs" refers to such reimbursements.

The debtor filed its bankruptcy case on October 31, 1995. The debtor and the Bank operated pursuant to the Agreement from the date in 1991 when the Agreement was made, and continued after the filing of the bankruptcy case until December 6, 1995, when the debtor ceased all of its retail operations. Shortly thereafter, debtor conducted a going-out-of-business sale, but the private credit cards of the sort here involved could not be utilized by debtor's customers during that sale.

Here in issue is the right of the Bank to charge-backs as an administrative expense. The total charge-backs by the Bank pursuant to the Agreement for the period fro n October 31, 1995 through the month of June, 1996, is $98,227.22. The debtor does not dispute that the Bank is entitled to administrative expense treatment for charge-backs based on the post-petition sale of goods, and the parties have agreed that an administrative expense claim based on such charge-backs in the amount of $39,483.57 is allowable as an administrative expense. The debtor, however, disputes the entitlement of the Bank to the balance of the amount claimed by the Bank as an administrative expense for the reason that such balance is based upon pre-petition sales and sales of extended warranties. There is no dispute that the difference between the $98,227.22 sought by the Bank and the $39,483.57 agreed to by the debtor, is based upon pre-petition sales of goods and extended warranties using credit cards issued pursuant to the Agreement.

In support of its position that it is entitled to have its entire request given administrative expense status, the Bank argues that if, after the filing of the bankruptcy, debtor had assumed the Agreement its claim would be entitled to an administrative expense treatment, and, further, that § 365 of the Bankruptcy Code allows a debtor a reasonable period of time to assume or reject an executory contract. Thus, there is also no dispute that the Agreement was an executory contract which debtor could assume or reject. A primary authority relied upon by the Bank in support of its position that its entire claim, whether based on pre-petition or post-petition purchases from the debtor, should be treated as an administrative expense is *In re Health Science Products, Inc.,* 181 B.R. 121 (Bankr.N.D.Ala.1994). In that case, the bank had made charge-backs post-petition against a deposit account maintained pursuant to the agreement between the debtor and

the bank. In that case, debtor sought injunctive relief, an order that the bank turn over the charge-backs, and also a holding of contempt for the making of the charge-backs. The court there denied relief to the debtor, and, in effect, because the parties continued to operate under the agreement post-petition, recognized an implied assumption by the debtor.

In opposition to the contentions of the Bank, debtor argues that the Bank is entitled solely to an unsecured claim for charge-backs arising from pre-petition sales. It offers substantial authority for the proposition that assumption of executory contracts pursuant to § 365 of the Bankruptcy Code cannot be made by implication, but must be made by express action of a debtor. Further, it is the position of the debtor that it is true that it accepted benefits from its relationship with the Bank post-petition, but such benefits related solely to post-petition transactions by customers with the debtor.

■ This court has reached the conclusion that the Bank is not entitled to treatment of charge-backs made relating to pre-petition transactions between customers of the debtor and the Bank as an administrative expense. We reach this conclusion because debtor is correct in its assertion that an executory contract can only be expressly assumed pursuant to 11 U.S.C. § 365(a) and F.R.B.P. 6006. This conclusion is inevitable when consideration is given to the express limitation in § 365(a) that there be no assumption or rejection of an executory contract without approval of the court. There is no room in the bankruptcy scheme for assumption of an executory contract by implication. *See In re University Medical Center,* 973 F.2d 1065, 1077 (3rd Cir.1992); *In re Whitcomb & Keller Mortgage Co.,* 715 F.2d 375, 380 (7th Cir.1983); *In re Revco D.S.,* 109 B.R. 264, 268 (Bankr.N.D.Ohio 1989). It follows then, that the Agreement between the parties furnishes no basis for conferring administrative expense status on the Bank's claim for charge-backs.

■ The Bank can only justify administrative expense treatment for charge-backs arising from pre-petition transactions by showing such charge-backs to be "actual,

necessary costs and expenses of preserving the estate," as provided in § 503 of the Bankruptcy Code. The parties are in agreement that that section of the Code has been definitively interpreted by the Sixth Circuit in *In re White Motor Corp.,* 831 F.2d 106 (6th Cir.1987). The court said:

> The test for whether a claim qualifies for payment as an administrative expense is set forth in *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976). In *Mammoth Mart,* the court stated that a claimant must prove that the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate. *Id.* at 954.

> A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate. If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession. *In re Jartran, Inc.,* 732 F.2d 584 (7th Cir.1984). However, if the inducement came from the debtor-in-possession, then the claims of the creditor are given priority. *Id.* at 586.

831 F.2d at 110.

In the present case, charge-backs, at least those based on prepetition sales, fail both arms of the *White Motor* test. Those transactions were not with the debtor-in-possession, but with the debtor, for the charge-backs are based on purchases made by customers from the debtor, and when charge slips for those sales were submitted to the Bank, the Bank credited the debtor, not the debtor-in-possession. The Bank can point to no transaction between itself and the debtor-in-possession which occurred post-petition, nor is there any room for the Bank to assert that it gave consideration to the debtor-in-possession, rather than to the debtor. Because the requirements of *White Motor* are in the conjunctive, the inability of the Bank to meet the first arm of the *White Motor* test suffices as a basis for holding that its claim is

not entitled to administrative expense priority. But in addition, it is clear that there is nothing which the Bank has done with respect to pre-petition sales on the private charge cards which "directly and substantially benefitted the estate." The only benefit with respect to these transactions which the Bank conferred was on the predecessor of the debtor-in-possession, the pre-petition debtor, when the Bank credited the account of that entity.

The Bank argues that it did confer a benefit. It says:

> When Debtor induced Bank to perform post-petition, such inducement went to the entire contract, and not just to those terms providing a benefit to Debtor. Moreover, the issue is not whether the post-petition charge-backs themselves resulted in a direct benefit to the estate. Rather, Bank's claim arises out of the Agreement and, thus, the Agreement overall must provide a direct and substantial benefit to the Estate in order for the claim to qualify as an administrative expense. Debtor clearly and substantially relies on credit card sales of its retail products and services. Debtor's post-petition operation under the Agreement provided a direct and substantial benefit to the Estate by permitting Debtor to engage in credit card sales.

This argument is without validity. What the Bank has articulated is but its argument that the executory contract was assumed by implication, a position which we have earlier decided against.

While we hold that transactions based upon pre-petition purchases by customers cannot provide the foundation for an administrative expense claim, the same cannot be said with respect to transactions which occurred post-petition. As to those events, clearly the transaction was with the debtor-in-possession, for the customer made the purchase from the post-petition entity, and, additionally, the Bank gave consideration to the debtor-in-possession. There was as well a benefit to the estate because it was beneficial to the post-filing entity to provide a mechanism which would encourage customers of the debtor-in-possession to continue to make purchases using their private credit cards. It is therefore equitable for the Bank to be allowed to make charge-backs based on post-petition sales. Pre-petition transactions, however, render no benefit to the post-petition estate and the same equitable considerations do not come into play.

Accordingly, the request by the Bank for administrative expense treatment for charge-backs based upon pre-petition transactions is denied.

So Ordered.