UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 00-31109

IN THE MATTER OF:  MICKEY O'CONNOR,

Debtor.

HARRY C. STUMPF,

Appellee,

versus

FRANK W. McGEE,

Appellant,

versus

JOHN F. STUMPF, JR.; LINCOLN T. CASE,

Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

July 16, 2001

Before GARWOOD, HALL,[1] and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this Chapter 11 bankruptcy case, the executory partnership agreement at issue having been neither expressly assumed nor rejected, of primary concern is whether the Trustee is substituted for the Debtor as a partner and can maintain an action against the

_____

[1]Circuit Judge of the Ninth Circuit, sitting by designation.

other partners for violations of transfer restrictions in the agreement and for distributions concerning those transfers, including whether the agreement was assumable under the Bankruptcy Code and Louisiana law. The bankruptcy court held the agreement passed through bankruptcy to the Reorganized Debtor, a liquidating trust managed by the Trustee. The district court reversed, in part, holding the agreement was *not* assumable and passed through bankruptcy unaffected, resulting in the Trustee's having *no* right to assert claims regarding the interest-transfers. The Trustee, Frank W. McGee, appeals the district court's judgment in favor of those claiming to be the Debtor's partners. **AFFIRMED and REMANDED.**

## I.

The facts are undisputed. In 1982, Mickey O'Connor (the Debtor), Ronald Case, Auby Smith, and Appellee John Stumpf formed a Louisiana general partnership, Westbank Inns. The partnership agreement restricts a partner's ability to transfer or assign his interest: (1) he *cannot* substitute another person as a partner *without* the written consent of a majority of the partners; (2) a majority must give written consent before a partner can assign, mortgage, or sell his interest in the partnership or its assets; (3) his sale, exchange, transfer, or assignment of his right to share in the partnership's profits or losses shall be valid *only if* his interest is first offered to the partnership, and then to the

2

other partners; and (4) any transaction in violation of these restrictions will be null and void.

Shortly after its formation, Westbank Inns entered into a joint venture with LaQuinta Motor Inns, with Westbank Inns owning a 40 percent interest. The joint venture owns and operates a LaQuinta Inn in Gretna, Louisiana.

In May 1987, approximately five years after formation of Westbank Inns, O'Connor petitioned for relief under Chapter 11 of the Bankruptcy Code. O'Connor remained debtor-in-possession for almost four years; McGee was appointed Chapter 11 Trustee in 1991. Approximately two years later, the Trustee met with Appellee John Stumpf and his brother, Appellee Harry Stumpf, informing them that he was the Trustee of O'Connor's bankruptcy estate and requesting that correspondence regarding Westbank Inns be sent to him.[2] At that meeting, the Trustee received a check for $155,000, which represented the 1991 distributions being held by John Stumpf for the benefit of O'Connor's bankruptcy estate for its share of partnership distributions. Also at that meeting, the Stumpfs offered to purchase the Debtor's partnership interest. The Trustee responded that he could *not* sell without court approval, and needed

_____

[2]As discussed *infra*, during the pendency of O'Connor's bankruptcy, it is claimed changes occurred concerning some of the partners, with the Debtor and Appellee John Stumpf supposedly being joined by Appellee Lincoln Case and Appellee Harry Stumpf pursuant to interest-transfers by John Stumpf and original partners Ronald Case and Auby Smith.

3

to determine the interest's value.  In mid-1993, John Stumpf offered $128,000 for the Debtor's interest.

In early 1994, the Trustee filed a Fourth Amended Disclosure Statement and a Second Amended Plan of Reorganization; *no* specific reference to the Debtor's partnership interest is included in either.  The Disclosure Statement, in describing the Debtor's assets and liabilities, refers to a 1991 accountant's report.  In that report, the Debtor's interest is valued at $150,000.  The Disclosure Statement provides:  "The Plan provides for the rejection of executory contracts *not* previously assumed or rejected, if any".  (Emphasis added.)  The section of the Disclosure Statement dealing with executory contracts does *not* specifically refer to any:

> All executory contracts, with or for the benefit of employees, agents or brokers, *not* heretofore assumed or terminated by agreement, or assured within the time frame set forth in this plan are heretofore rejected.  Debtor reserves the right to accept or reject executory contracts between the Effective Date and 60 days after the Effective Date.

(Emphasis added.)  The "Effective Date" is defined as the date on which the order confirming the Plan becomes final and non-appealable.

The Plan establishes a liquidating trust, to which all of the Debtor's assets will be transferred, with McGee as Trustee and the creditors as beneficiaries.  Regarding executory contracts, the Plan contains language essentially identical to that in the

4

Disclosure Statement.  No motion to assume or reject the partnership agreement was filed.  The Plan was confirmed in May 1994.

As mentioned in footnote 2 *supra*, between 1988 and January 1994, during the pendency of the bankruptcy proceedings, O'Connor's partners engaged in various interest-transfers.  Appellees John Stumpf and Lincoln Case each acquired one-half of Ronald Case's; John Stumpf acquired Smith's; and John Stumpf transferred a portion of his to his brother, Appellee Harry Stumpf. In April 1989, prior to transferring his interest, Ronald Case filed a petition for relief under Chapter 7 of the Bankruptcy Code.  And, in March 1990, Smith's interest was seized by one of his creditors, from whom John Stumpf acquired it.  Therefore, as of January 1994, those claiming partnership in Westbank Inns were O'Connor, and Appellees John and Harry Stumpf and Lincoln Case.

Following plan-confirmation, the Trustee filed an adversary complaint in bankruptcy court against John and Harry Stumpf and Lincoln Case.  Of particular importance to this interlocutory appeal, as discussed *infra*, *Westbank Inns was not sued*.  Nor did the Trustee seek to recover the economic value of the Debtor's interest.  Instead, the complaint concerned only the interest-transfers.  The Trustee sought:  (1) a declaration that they were void for violating the partnership agreement restrictions; (2) a declaration of the Chapter 11 estate's proportionate ownership of

the terminated interests of Ronald Case and Smith; and (3) an accounting for partnership distributions Appellees received attributable to the interest-transfers.

Following a trial, the bankruptcy court held: Ronald Case's partnership ceased upon his Chapter 7 filing in April 1989; Smith's partnership ceased in March 1990, when his interest was seized by a creditor and the seizure was *not* revoked within 30 days; all of the interest-transfers were void because, contrary to the agreement, the interests were *not* first offered to the partnership and then the other partners; the value of the interests formerly held by Ronald Case and Smith, as of the time their partnerships ceased, must be paid to them after determining the value in an evidentiary hearing; the Trustee did *not* specifically assume or reject the agreement; it passed through bankruptcy; O'Connor's interest is the property of the Reorganized Debtor's estate and it remains a partner; and the Trustee is therefore entitled to distributions and is probably entitled to purchase the former partners' interests. The parties were directed to schedule the evidentiary hearing to determine the value of the interests of Ronald Case and Smith at the time their partnerships ceased.

The district court affirmed in part, and reversed in part. It held the agreement was *not* assumable under 11 U.S.C. § 365(c)(1) because, under the applicable non-bankruptcy (Louisiana) law, the non-debtor partners had *not* consented to performance by the

6

Trustee. It agreed with the bankruptcy court that the agreement passed through bankruptcy. But, it held: the bankruptcy court was incorrect in holding the pass-through resulted in the agreement becoming part of the Debtor's estate; instead, the agreement was unaffected by the bankruptcy proceedings and remains binding on O'Connor; and O'Connor, *not the Trustee*, can claim a right under the agreement to distributions and to determine the validity of interest-transfers.

II.

The Trustee contends: the district court lacked jurisdiction because leave to appeal was denied previously or because Appellees' notices of appeal were *not* timely; Appellees have *no* standing because they failed to challenge the bankruptcy court's finding that the transfers were void; the district court erred in holding that the partnership agreement passed through bankruptcy to the Debtor rather than to the Reorganized Debtor (liquidating trust); alternatively, the agreement was assumed; and Appellees did *not* raise the theory adopted by the district court.

"We review the decision of the district court by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." **Kennard v. MBank Waco, N.A. (Matter of Kennard)**, 970 F.2d 1455, 1457 (5th Cir. 1992). Those findings of fact are reviewed for clear error; the conclusions of law, *de novo*. FED. R. BANKR. P. 8013; **Phoenix**

7

*Exploration, Inc. v. Yaquinto (Matter of Murexco Petroleum, Inc.)*,
15 F.3d 60, 62 (5th Cir. 1994).

A.

The Trustee contends the district court lacked jurisdiction because leave to appeal had been denied previously or because Appellees' notices of, and motions for leave to, appeal were *not* timely filed. Although raised in district court, it did *not* address this issue.

District courts may hear appeals from interlocutory orders, such as the bankruptcy court's partial judgment, "with leave of the court", pursuant to 28 U.S.C. § 158(a) (district courts' jurisdiction to hear appeals from bankruptcy court final judgments, orders, and decrees, *as well as from* interlocutory orders and decrees). To appeal a bankruptcy court's interlocutory order, a party must file a notice of appeal, accompanied by a motion for leave to appeal. FED. R. BANKR. P. 8001(b).

> If a required motion for leave to appeal is
> *not* filed, but a notice of appeal is *timely*
> filed, the district court ... may grant leave
> to appeal or direct that a motion for leave to
> appeal be filed.... Unless an order directing
> that a motion for leave to appeal be filed
> provides otherwise, the *motion* shall be filed
> within 10 days of entry of the order.

FED. R. BANKR. P. 8003(c) (emphasis added).

The Bankruptcy Rules do *not* expressly provide the time for appealing an interlocutory order. Rule 8001(b) states an interlocutory appeal "shall be taken by filing a notice of appeal,

8

as prescribed in subdivision (a) of this rule". FED. R. BANKR. P. 8001(b). Subdivision (a), governing the manner for appealing as of right, provides an appeal "shall be taken by filing a notice of appeal ... within the time allowed by Rule 8002". FED. R. BANKR. P. 8001(a). In turn, Rule 8002 provides:

> The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from. *If* a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.

FED. R. BANKR. P. 8002(a) (emphasis added).

Except in circumstances *not* at issue here, the bankruptcy court may extend the time for filing the notice, if the request is "made by written motion filed before the time for filing a notice of appeal has expired". FED. R. BANKR. P. 8002(c)(2). And, a "motion filed not later than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect". *Id*. Such an extension "may not exceed 20 days from the expiration of the time for filing a notice of appeal otherwise prescribed by this rule or 10 days from the date of entry of the order granting the motion, whichever is later". *Id*.

In short, Rule 8001(b) provides an interlocutory appeal is to be taken in the manner prescribed in Rule 8001(a); in turn, subpart (a) requires the notice to be filed within the time allowed by Rule

9

8002. Therefore, Rule 8002's time limits apply to interlocutory appeals. This is compelled by the statute. *See* 28 U.S.C. § 158(c)(2) (appeal authorized by § 158(a) (including interlocutory appeals) "shall be taken in ... the time provided by Rule 8002 of the Bankruptcy Rules"); *see also* **Michel v. Fisher**, 185 B.R. 259, 261 (N.D. Ill. 1995) (applying Rule 8002(a)'s ten-day deadline for notice of interlocutory appeal); **Am. Freight Sys., Inc. v. W. A. Walker & Assocs., Inc. (In re Am. Freight Sys., Inc.)**, 153 B.R. 316, 319 (D. Kan. 1993) (same).

The bankruptcy court's partial judgment was entered 7 May 1998. John Stumpf filed a timely notice of appeal within ten days, on 15 May. FED. R. BANKR. P. 8002(a).

On that same day (within the ten-day period), the bankruptcy court granted Harry Stumpf's motion for an extension of 20 days to file his notice. FED. R. BANKR. P. 8002(c)(2). Harry Stumpf filed it, accompanied by a motion for leave to appeal, on 28 May (within the extended period).

Also on 15 May, within the time allowed under Rule 8002(c)(2), Lincoln Case moved for an extension of time to file his notice. The bankruptcy court granted the motion on 20 May. As discussed, and pursuant to Rule 8002(c)(2), that court was authorized to extend the time for filing the notice for a period not to "exceed 20 days from the expiration of the time ... otherwise prescribed by this rule". The "time ... otherwise prescribed" for filing the

10

notice from the partial judgment entered on 7 May was Monday, 18 May (because the tenth day was a Sunday). *See* FED. R. BANKR. P. 9006(a). Accordingly, the bankruptcy court was authorized to grant an extension for 20 days from that date, or until 7 June. Because 7 June was a Sunday, Lincoln Case's 8 June notice was timely filed. *See* FED. R. BANKR. P. 9006(a).

Therefore, Appellees' notices of appeal were timely. But, only Harry Stumpf timely filed the requisite motion for leave to appeal. Nevertheless, the district court had authority to treat John Stumpf's and Lincoln Case's timely notices as such motions. *See* FED. R. BANKR. P. 8003(c).

In bankruptcy court in July 1998, Case moved, *inter alia,* to amend the partial judgment. Because the motion was filed more than ten days after entry of that judgment, the motion did *not* affect the previously filed notices. *See* FED. R. BANKR. P. 8002(b) (certain specified motions, *if* filed within ten days of entry of the judgment, order, or decree, toll the time for filing a notice of appeal until "entry of the order disposing of the last such motion outstanding").

That October, the district court dismissed all of the appeals *without prejudice*, stating that, because Case's motion was pending in bankruptcy court, it was premature to grant leave to appeal. The district court noted that, if the pending motion was denied,

"the parties will be entitled to file motions for leave to appeal from an interlocutory judgment".

On 16 April 1999, the bankruptcy court entered an order denying Case's motion. He filed his notice and motion on 26 April 1999, within ten days of entry of that order. John Stumpf filed his notice and motion on 30 April, within ten days of the date on which Case's notice was filed. *See* FED. R. BANKR. P. 8002(a). But, Harry Stumpf's notice and motion were *not* filed until 11 May, *more than* ten days after entry of the order, and more than ten days after Case filed his notice. Nevertheless, the district court granted all three motions for leave to appeal.

The Bankruptcy Rules do *not* provide guidance as to the time for appealing under such circumstances. Appellees are *not* appealing the bankruptcy court's April 1999 denial of Case's motion. They are, instead, appealing the May 1998 partial judgment, which they initially timely appealed. But, the district court dismissed their appeals *without prejudice*, stating they would be entitled to seek leave to appeal if the bankruptcy court denied Case's then pending motion. The Rules do *not* answer the question whether the notices of appeal filed after the order denying Case's motion must be filed within ten days when, as here, Appellees are *not* appealing that order. If the ten-day rule applies, John Stumpf's and Case's appeals were timely; Harry Stumpf's was *not*.

12

"In order to obtain prompt appellate review, often important to the administration of a case under the [Bankruptcy Code]", the time to appeal bankruptcy orders is shorter than that provided for other civil appeals. *See* FED. R. BANKR. P. 8002, advisory committee note. But, because the Rules do *not* specifically address circumstances such as these, and because the issues raised by Harry Stumpf's appeal are identical to those raised in the timely appeals by John Stumpf and Case, we hold the district court had jurisdiction to grant Harry Stumpf's motion for leave to appeal.

This conclusion is consistent with the interpretive policy expressed in Bankruptcy Rule 1001: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding". FED. R. BANKR. P. 1001. Harry Stumpf's notice of, and motion for leave to, appeal were filed within 30 days of the bankruptcy court's order denying Case's motion, and thus were within the time the district court might have granted an extension for filing a notice of appeal on grounds of excusable neglect, had an extension been requested. *See* FED. R. BANKR. P. 8002(c)(2). Obviously, the interests in efficiency and judicial economy underlying Rule 1001 would *not* be served by holding Harry Stumpf's appeal untimely, thereby giving him the opportunity to raise on appeal, *after* final judgment, the very issues timely raised in the appeals by John Stumpf and Case. *See* **In re Rambo**, 209 B.R. 527, 529 (10th Cir. B.A.P.) (fact that appellant "tried unsuccessfully

13

to obtain an interlocutory appeal does *not* bar him from appealing the same order after entry of a final decision" (emphasis added)), *aff'd*, 132 F.3d 43 (10th Cir. 1997).

Contrary to the Trustee's assertion, nothing in the Bankruptcy Rules prohibits the district court from denying leave to appeal without prejudice and concomitantly authorizing the parties to move for leave to appeal after the bankruptcy court has ruled on the pending motion that prompted the dismissals. The decision to grant or deny leave to appeal a bankruptcy court's interlocutory order is committed to the district court's discretion. *See **In re Am. Freight Sys., Inc.***, 153 B.R. at 318.

### B.

The Trustee maintains Appellees (except as to John Stumpf's original interest) lack standing to contend the Trustee is *not* a partner because they did *not* challenge the bankruptcy court's ruling that the interest-transfers to them, in violation of the partnership agreement restrictions, were void. In their appeals to the district court, each Appellee contended that, because the Trustee never acquired the status and rights of a partner, he had *no* right to assert any claims against them regarding distributions and interest-transfers.

Therefore, although Appellees did *not* specifically challenge the bankruptcy court's interpretation of the agreement and its ruling that the transfers were void, they contended that the

14

bankruptcy court had *no* basis for so ruling, because the Trustee, as a non-partner, lacked standing to assert *any* claims against them. The district court agreed with Appellees' assertions in that respect. As prevailing parties in district court, Appellees have standing to defend the district court's judgment.

C.

Subject to various conditions, "the trustee, subject to the court's approval, *may* assume or reject any executory contract ... of the debtor". 11 U.S.C. § 365(a) (emphasis added). Notwithstanding "whether ... [the] contract prohibits or restricts assignment of rights or delegation of duties", it may *not* be assumed if, *inter alia*, "*applicable law* excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to *an entity other than the debtor* ... and ... such party does *not* consent" to the assumption. 11 U.S.C. § 365(c)(1)(A), (B) (emphasis added).

In a Chapter 11 case, the trustee may assume or reject an executory contract at any time before plan-confirmation, 11 U.S.C. § 365(d)(2), or, subject to § 365, the plan may provide for the assumption or rejection of any executory contract *not* previously rejected. 11 U.S.C. § 1123(b)(2). The requisite bankruptcy court approval for assumption or rejection must appear either in an order or as part of the plan-confirmation. 11 U.S.C. § 365(a).

15

1.

The bankruptcy court held the agreement an executory contract. The district court also treated it as one, noting that the parties did *not* dispute that characterization. Likewise, because the parties do *not* dispute that here, we will assume the partnership agreement was executory at the time of O'Connor's bankruptcy filing.[3]

2.

Before addressing whether, under 11 U.S.C. § 365(c)(1), the agreement was assumable, we consider the Trustee's alternative, *res judicata* contention that, irrespective of § 365(c)(1), the agreement was assumed in the confirmed Plan and Appellees consented to the assumption by failing to object to the Plan. Appellees counter that the Plan's boilerplate language did *not* provide for such assumption and, in any event, they and the partnership did *not* receive notice of the proposed assumption adequate to satisfy due process.

John Stumpf was a creditor, was listed on the mailing matrix, and received notices regarding O'Connor's bankruptcy, but he had settled his claim against the estate prior to plan-confirmation.

---

[3]Other courts have likewise treated partnership agreements as executory contracts when the issue was *not* disputed. *See, e.g.*, **Summit Inv. & Dev. Corp. v. Leroux**, 69 F.3d 608, 610 n.3 (1st Cir. 1995)*; see also* **Breeden v. Catron (In re Catron)**, 158 B.R. 624, 626 (Bankr. E.D. Va. 1992) (holding partnership agreement is executory contract), *aff'd*, 158 B.R. 629 (E.D. Va. 1993), *aff'd*, 25 F.3d 1038 (4th Cir. 1994).

Neither Westbank Inns nor the other partners' names appeared on the matrix, and they did *not* receive notices regarding the bankruptcy. The bankruptcy court held Appellees' pre-plan-confirmation actual knowledge of the bankruptcy satisfied due process.

Although a plan may provide for the assumption of an executory contract, that authorization is "subject to section 365". 11 U.S.C. § 1123(b)(2). As discussed *infra*, under § 365(c)(1), the agreement is *not* assumable.

In any event, notwithstanding § 365(c)(1), the bankruptcy court, interpreting the Plan, held it neither assumed nor rejected the agreement. That interpretation is entitled to deference. *See* **Matter of Weber**, 25 F.3d 413, 416 (7th Cir. 1994) ("In reviewing a bankruptcy court's interpretation of a confirmed plan, ... the reviewing court should extend to that interpretation the same deference that is otherwise paid to a court's interpretation of its own order."); **Terex Corp. v. Metro. Life Ins. Co. (In re Terex Corp.)**, 984 F.2d 170, 172 (6th Cir. 1993) (court reviews bankruptcy court's interpretation of plan with "full deference").

Neither the Disclosure Statement nor the Plan made any specific reference to the agreement. The former states that "[t]he Plan provides for the rejection of executory contracts not previously assumed or rejected, if any"; and reserves the right to accept or reject executory contracts for 60 days after the order confirming the Plan becomes final. Consistent with language in the

17

Disclosure Statement, the Plan provides that executory contracts "with or for the benefit of employees, agents or brokers ... *are hereby rejected*", and that "[a]ll ... executory contracts, other than contracts with or for the benefit of employees, agent[s] or brokers, *not* rejected prior to time [*sic*] set forth herein *will be assumed*". (Emphasis added.)

By using the phrase "will be" to refer to assumption of executory contracts, as contrasted with the phrase "are hereby rejected" to refer to rejected executory contracts, the Plan implies that something more than plan-confirmation is necessary for assumption. Moreover, interpreting the Plan's boilerplate language as providing for assumption of the agreement would be inconsistent with § 365(a), which requires court approval.

The bankruptcy court's interpretation is consistent with the conclusions by other courts that an executory contract may *not* be assumed either by implication or through the use of boilerplate plan language. *See* **In re Swallen's, Inc.**, 210 B.R. 120, 122 (Bankr. S.D. Ohio 1997) (because assumption of executory contract requires court approval, executory contract "can only be expressly assumed"); **In re Cole**, 189 B.R. 40, 46-47 (Bankr. S.D.N.Y. 1995) (boilerplate plan language purporting to assume all executory contracts *not* expressly rejected prior to confirmation ineffective to assume leases because it would allow circumvention of § 365's requirement of judicial approval); **In re Parkwood Realty Corp.**, 157

18

B.R. 687, 689, 690-91 (Bankr. W.D. Wash. 1993) (catch-all plan boilerplate language stating all other executory contracts not previously rejected shall be deemed rejected was insufficient to reject contract).

3.

The bankruptcy court did *not* consider whether the agreement was assumable. The district court held it was *not*.

As stated, 11 U.S.C. § 365(c)(1) provides:

> The trustee may *not* assume or assign any executory contract ... of the debtor, *whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties*, if ... *applicable law* excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to *an entity other than the debtor* ... and ... such party does *not* consent to such assumption.

11 U.S.C. § 365(c)(1)(A), (B) (emphasis added). Accordingly, although the agreement restricts a partner's ability to transfer his interest, the focus for determining whether the agreement is *not* subject to assumption under § 365(c)(1) is, instead, "applicable law".

Under Louisiana law, a partner *cannot* make a third person a member of the partnership *without* his partners' consent. LA. CIV. CODE art. 2812. Appellees did *not* consent to substituting the Trustee for the Debtor. Accordingly, the district court correctly held the agreement was *not* assumable under § 365(c)(1). *See* **Tonry**

19

*v. Hebert (Matter of Tonry)*, 724 F.2d 467, 468-69 (5th Cir. 1984)
(where debtor-attorney's clients had right, under Louisiana law, to
terminate executory contingent fee contracts at will and to decline
performance by trustee or trustee's attorney, contracts were *not*
assumable under § 365(c)(1)); *Turner v. Avery*, 947 F.2d 772, 774
(5th Cir. 1991) (same).[4]

4.

The bankruptcy court held:  the agreement passed through
bankruptcy; the Debtor's interest was property of the Reorganized
Debtor (liquidating trust established by the Plan and administered
by the Trustee for the benefit of the creditors); the estate
remained a partner in Westbank Inns; and the Trustee was entitled
to distributions on account of the estate's interest *and* was
probably entitled to purchase the interests of former partners
Ronald Case and Smith.

The district court agreed that the agreement passed through
bankruptcy, but held that, rather than the pass-through resulting

---

[4]To the extent the Trustee maintains § 365(c)(1) should be
limited to personal service contracts or attorney contingent fee
contracts, we reject that contention.  "[T]he express language of
§ 365(c) ... belies any limitation to personal service contracts".
*Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff
Airways, Inc.)*, 700 F.2d 935, 943 (5th Cir. 1983).  *Braniff* held
that, under § 365(c), the district court had *no* authority to order
Braniff's (debtor-in-possession) assumption of its defaulted lease
and its subsequent assignment of the lease to a third party without
the approval of the lessor, the Federal Aviation Administration
(FAA), because applicable law excused the FAA from accepting
performance from the assignee.  *Id*.

in the agreement's becoming part of the estate, the agreement was *unaffected* by the bankruptcy proceedings and remained binding on the Debtor, who alone was entitled both to claim rights to his share of the distributions and to determine the validity of the interest-transfers.[5]  At first blush, it obviously seems quite contrary to the purpose of the Bankruptcy Code for the Debtor, *not* his estate, to have the right to those distributions.  That issue, however, was *not* before the district court, and, as discussed *infra*, is *not* before us, because the Trustee did *not* seek to recover the economic value of the Debtor's interest, including by *not* suing the partnership.

a.

The Trustee contends that, even if he could *not* become a partner, Louisiana partnership law permits a partner, without his partners' consent, to share his *economic interest* in the partnership with a third person.  Therefore, according to the Trustee, the district court erred by holding:  O'Connor's economic interest in the partnership is *not* property of the estate; and only O'Connor can claim a right to the distributions.  Appellees acknowledged at oral argument that, for the estate, the Trustee *may* be entitled to recover the value of the Debtor's interest.  On the

---

[5]Contrary to the Trustee's contention, the pass-through theory adopted by the district court was raised by Appellees in district court.

other hand, they contend: the Trustee did *not* seek such relief; and, in any event, *the partnership* is the entity against whom such an action must be brought.

The Trustee is correct that, under Louisiana law, "[a] partner may share his *interest in the partnership* with a third person without the consent of his partners". LA. CIV. CODE art. 2812 (emphasis added). ***First Federal Savings & Loan Association of Warner Robins v. Delta Towers, Ltd.***, 544 So. 2d 1331, 1342 (La. App. 4th Cir.), *writ denied*, 548 So. 2d 1250 (La. 1989), states that a partner's "interest" in the partnership "usually means a partners' share of the partnership, not the assets of the partnership". In this regard, a partner's sharing his interest with a third person "*cannot confer partner status* upon the third party. *Unless* he is a partner such third party has *no* right to assert a claim against the remaining partners, or the partnership". ***Salsul Co. v. Kohlmeyer & Co.***, 354 So. 2d 711, 714 (La. App. 4th Cir.) (emphasis added), *rev'd on other grounds*, 356 So. 2d 431 (La. 1978).

In any event, the Trustee's contention ignores his *not* having sued to recover the economic value of O'Connor's interest. Again, he sought *only*: (1) a declaration that the interest-transfers to Appellees were void because they violated the agreement's restrictions; (2) a declaration of the Chapter 11 estate's proportionate ownership of the terminated interests of Ronald Case

22

and Smith; and (3) an accounting of the distributions Appellees received as a result of their acquisitions of those interests.

Moreover, the Trustee did *not* sue the partnership. "A partnership is a juridical person, *distinct* from its partners." LA. CIV. CODE art. 2801 (emphasis added). As such, it can be sued. LA. CODE CIV. P. art. 737 ("A partnership has the procedural capacity to be sued in its partnership name."); *see also **Peck & Vantine v. Hebert***, 589 So. 2d 57, 59 (La. App. 1st Cir. 1991). Under Louisiana law, the partnership would be an indispensable party in any action by the Trustee to recover the value of O'Connor's interest. *See* LA. CODE CIV. P. art. 737 ("The partners of an existing partnership may *not* be sued on a partnership obligation unless the partnership is joined as a defendant." (emphasis added)); *see also **Brackley & Voelkel Const., Inc. v. 3421 Causeway, Ltd.***, 712 So. 2d 716, 719 (La. App. 5th Cir. 1998).

The "partnership ... is primarily liable for its debts". LA. CIV. CODE art. 2817. Thus, regarding a partnership obligation, a partnership creditor must first exhaust his rights against the partnership *before* he can recover from the partners. *See **Brackley & Voelkel***, 712 So. 2d at 719; ***Koppers Co., Inc. v. Mackie Roofing & Sheet Metal Works***, 544 So. 2d 25, 26 (La. App. 4th Cir. 1989); *see also **Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.***, 37 F.3d 193, 195-96 (5th Cir. 1994) (prior action in which liability imposed on limited partnership *not res judicata* in

23

subsequent action against general partner to collect judgment against partnership, *even though* general partner was party in prior action, because general partner *not* sued in prior action for its *secondary liability* as general partner), *cert. denied*, 514 U.S. 1065 (1995).

Again, the Trustee did *not* seek the value of O'Connor's interest, and did *not* sue the partnership. Therefore, whether O'Connor's economic interest is property of the bankruptcy estate was *not* at issue, and the district court did *not* address it. Instead, the district court held: the *partnership agreement* (as opposed to O'Connor's economic interest in the partnership) was *not* assumable and, therefore, was *not* part of the Debtor's estate; and, because it was *not*, the Trustee had *no* rights under that agreement to challenge the validity of the interest-transfers or to claim a right to distributions made pursuant to them. Restated, the district court addressed *only* the Trustee's claimed right to proceed *as a partner under the partnership agreement*, and did *not* address the Trustee's authority, *under the Bankruptcy Code*, to proceed *against the partnership* to recover the value of the Debtor's interest in it. Accordingly, and contrary to the Trustee's assertion, the district court's ruling does *not* create a new category of exempt property or deprive the Chapter 11 estate of valuable property rights.

24

b.

As discussed *supra*, the partnership agreement is *not* assumable. The Bankruptcy Code does *not* address what happens to an unassumable executory contract after a plan is confirmed in a Chapter 11 case (or, for that matter, an assumable executory contract which is neither assumed nor rejected in a Chapter 11 case). Under the former Bankruptcy Act, the Fourth Circuit held an "executory contract ... remains in force ... until it is rejected, and unless rejected, it passes with *other property of the debtor to the reorganized corporation*". **Consol. Gas Elec. Light & Power Co. of Baltimore v. United Rys. & Elec. Co. of Baltimore**, 85 F.2d 799, 805 (4th Cir. 1936) (emphasis added), *cert. denied*, 300 U.S. 663 (1937).

There appears to be general agreement that the "pass-through" theory continues to apply in Chapter 11 cases governed by the Code, at least where an *assumable* executory contract is neither assumed nor rejected, *and* the Reorganized Debtor continues to operate the debtor's pre-bankruptcy business. *See, e.g.*, **In re Day**, 208 B.R. 358, 368 (Bankr. E.D. Pa. 1997) ("It has long been the rule in bankruptcy that an executory contract that is neither assumed nor rejected continues in place between the parties, passing through the bankruptcy *to the reorganized debtor*." (emphasis added)); **Polysat, Inc. v. Union Tank Car Co. (In re Polysat, Inc.)**, 152 B.R. 886, 890 (Bankr. E.D. Pa. 1993) ("In a chapter 11 case, where a

25

debtor has failed to expressly assume or reject a[n] ... executory contract, that ... contract will be *unaffected* by the bankruptcy filing". (emphasis added)); *see also* 3 COLLIER ON BANKRUPTCY, ¶ 365.04[2][d] (15th ed. rev. 2001) ("If the debtor fails either to assume or reject a contract by separate order or in its plan, it appears that the contract would continue in existence.... *[I]f the debtor continues operating*, *arguably the contract passes through the bankruptcy and remains a liability of the reorganized entity*." (emphasis added)); 7 COLLIER ON BANKRUPTCY, ¶ 1123.02[2] (plan may provide for assumption of executory contract, or "the contract may 'ride through' the plan *without being affected*" (emphasis added)). In a case arising under the Code, our court has noted: "If an executory contract is neither assumed nor rejected, it will 'ride through' the proceedings and be *binding on the debtor* even after a discharge is granted". *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (Matter of Nat'l Gypsum Co.)*, 208 F.3d 498, 504 n.4 (5th Cir.) (emphasis added), *cert. denied*, ___ U.S. ___, 121 S. Ct. 172 (2000).

The parties did *not* cite, nor did we find, any cases applying the pass-through theory when, under § 365(c)(1), the executory contract was *not* assumable. But, we see *no* reason why the theory should *not* apply. This is because there is *no* difference between a contract that, under § 365(c)(1), *cannot* be assumed, and one

26

which is neither assumed nor rejected. Each is simply *unaffected* by the bankruptcy proceedings.

The Trustee contends that, under the pass-through theory, the contract passes to the Reorganized Debtor, rather than to the pre-bankruptcy Debtor (O'Connor). But here, the Reorganized Debtor is a *liquidating trust* and the executory contract is a partnership agreement; the contract could *not* pass through bankruptcy *unaffected* if it passed to the Reorganized Debtor. It would be *affected*: the Trustee would become a partner without the consent of the non-debtor partners, constituting a *de facto* assumption prohibited by § 365(c)(1). *Cf.* **In re Cajun Elec. Power Coop., Inc.**, 230 B.R. 715 (Bankr. M.D. La. 1999). In that case, the debtor, an electric power cooperative, had requirements contracts with its members, by which it was to supply power to them. *Id.* at 724. Those contracts were neither assumed nor rejected in a proposed plan. *Id.* at 734. Because the plan was for *liquidation, rather than reorganization*, the bankruptcy court concluded that the contracts could *not* pass through bankruptcy *unaffected*, because the members would be without a source of electricity. *Id.* at 735. Therefore, it held there was a *de facto* rejection. *Id.*

Accordingly, the district court correctly held that the partnership agreement did *not* pass through bankruptcy to the

27

Reorganized Debtor.  Instead, it passed through to the pre-bankruptcy Debtor, *unaffected* by the bankruptcy proceedings.[6]

### III.

For the foregoing reasons, the judgment of the district court dismissing the Trustee's claims is **AFFIRMED**.  This case is **REMANDED** to the district court with instructions to remand it to the bankruptcy court for such further proceedings, if any, as may be appropriate, consistent with this opinion.

*AFFIRMED and REMANDED*

---

[6]It is *not* necessary to address Appellee Lincoln Case's alternative grounds for affirmance (acquisitive prescription and good faith possession).