GCP CT SCHOOL ACQUISITION, LLC, et al., Debtors.

Tenucp Property LLC, Appellant,

v.

Lynne F. Riley, Chapter 7 Trustee, Appellee.

BAP No. MB 09–065.
Bankruptcy No. 09–11846–WCH.

United States Bankruptcy Appellate Panel of the First Circuit.

May 24, 2010.

820

Peter J. Haley, Esq., on brief for Appellant.

Lynne F. Riley, Esq., and Jacob Aaron Esher, Esq., on brief for Appellee.

Before LAMOUTTE, VAUGHN, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

Tenucp Property LLC ("Tenucp") appeals the bankruptcy court's order (the "Order") denying its administrative claim for amounts it alleges are due and owing under a real estate lease for the post-petition, pre-rejection period pursuant to § 365(d)(3).[1] At issue, among other things, was the effective date of the lease's rejection. Tenucp argued that Lynne F. Riley (the "Trustee") took no action to assume or reject the lease and, therefore, it was deemed rejected as a matter of law on July 13, 2009 pursuant to § 365(d)(4). However, the bankruptcy court determined that Tenucp had received sufficient notice of the Trustee's intent to reject the lease, and that the lease rejection was effective as of May 23, 2009.

On appeal, Tenucp argues that the bankruptcy court erred in several respects. First, Tenucp argues that the bankruptcy court lacked authority to approve retroactively the rejection of the lease absent a specific motion seeking to reject the lease. Second, Tenucp takes issue with the bankruptcy court's finding that Tenucp had effective notice of the Trustee's intent to reject the lease. Finally, Tenucp argues that the bankruptcy court abused its discretion in establishing the May 23, 2009 lease rejection date.

## BACKGROUND

Prior to their bankruptcy filings, GCP CT School Acquisition, LLC (the "Debtor"), and various affiliates (the "affiliates" and, collectively with the Debtor, the "Debtors") operated radio and television broadcasting schools in sixteen different states. Tenucp was the landlord under a written real estate lease (the "Lease") with one of the Debtor's affiliates, GCP CBS

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. §§ 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

Burbank LP ("GCP Burbank"), for 6,694 square feet of office space in Universal City, California.

Beginning in February 2009, the Debtor's secured lender, National City Bank ("National City"), effectuated a series of offsets against the Debtors' operating accounts, forcing the schools to shut down abruptly with just a few weeks remaining in the semester. Shortly thereafter, the Debtors commenced their respective chapter 7 cases,[2] and the Trustee was duly appointed.

Immediately after her appointment, the Trustee negotiated with some of the Debtors' equity holders (certain investment funds) for funding to conduct a so-called "teach-out" so that the schools could reopen for a limited time to enable enrolled students to complete the remaining class hours necessary to earn certificates of completion. In order to effectuate the teach-out, the Trustee filed a motion (the "operating motion") seeking an order: (1) authorizing her to operate the Debtors' businesses for a limited period of time; (2) approving an agreement (the "Investment Agreement") with the investments funds to provide funding for the teach-out in accordance with a proposed budget; and (3) allowing payment of certain pre-petition wage and benefit claims of the Debtors' employees as necessary to effectuate the teach-out. The proposed budget for the teach-out included payments of use and occupancy expenses to landlords of the affected school facilities, including Tenucp, for the teach-out period in accordance with § 365.

In arguing that a teach-out was in the best interests of the Debtors' estates, the Trustee stated, among other things, that there were prospective buyers for the schools, and that the teach-out would en-hance the value of the estates and provide the Trustee with time to market the businesses as a going concern. Tenucp did not object to the operating motion. On March 19, 2009, the bankruptcy court granted the operating motion, and various school facilities reopened.

Thereafter, the Trustee filed a motion (the "sale motion") seeking authority to sell the Debtors' assets to a third party (the "buyer"), and to assume and assign certain of their real estate leases, in accordance with the terms of an Asset Purchase Agreement (the "APA"). The sale motion provided that the Trustee would assume and assign to the buyer the leases for ten of the Debtor's school locations (the "Acquired School Locations"). The Acquired School Locations were identified on a schedule attached to the APA. Tenucp's Lease was not identified as one of the assigned leases; rather, it was identified, on another schedule attached to the APA, as an "Equipment Location" (a leasehold not being assumed that contained equipment, furniture, furnishings, and fixtures to be purchased by the buyer).

With respect to use and occupancy charges for the Equipment Locations, the sale motion provided that "under the National [City] Settlement, National [City] shall be responsible for payment of any Use and Occupancy Charges from the date any teach-out ends at the various school locations, until May 31, 2009. Commencing June 1, 2009, Robinson Media [the buyer] will be responsible for payment of any Use and Occupancy Charges incurred because of any Equipment remaining at any Equipment Location" The APA similarly provided that the Debtors' estates would be responsible for payment of any use and occupancy charges incurred at the

---

**2.** The bankruptcy court initially consolidated the cases for administrative purposes only, but later entered an order substantively consolidating the cases.

Equipment Locations from the closing date through May 31, 2009, in accordance with a carve-out and settlement agreement with National City, and that, commencing June 1, 2009, the buyer would be responsible for paying any use and occupancy charges incurred because of equipment remaining at any of the Equipment Locations.

Along with the sale motion, the Trustee also filed a motion ("settlement motion") seeking approval of a settlement agreement between the Trustee and National City, wherein National City agreed to fund certain administrative expenses of the Debtors' estates by carving out such expenses from its security interest in the sale proceeds. This carve-out agreement also provided for use and occupancy charges for Equipment Locations to be paid through May 31, 2009. Tenucp did not object to either the sale or settlement motions, and the bankruptcy court granted both motions on May 6, 2009.

On May 4, 2009, prior to the hearing on the sale motion, the Trustee filed a motion (the "motion to extend") seeking to extend the deadline to assume or reject certain unexpired real estate leases to June 4, 2009.[3] In the motion to extend, the Trustee stated: "Pursuant to the Sale Motion and related filings, either the prospective buyer, or any successful bidder, has until the Closing Date, as that term is defined under the Asset Purchase Agreement, to designate leases for assumption and as-

signment. *Leases not designated for assumption will be deemed rejected as of the extended deadline date [of June 4, 2009].*" (Emphasis added.) No parties objected, and the bankruptcy court entered an endorsed order extending the deadline to June 4, 2009.

The sale closed, and, thereafter, on June 3, 2009, the Trustee sent an e-mail to Tenucp providing an accounting of the proposed amount of use and occupancy to be paid for the period of April 4, 2009 (the end of the teach-out period) through May 23, 2009 (the date the buyer removed the equipment from the premises).[4] The Trustee indicated that the payment would be an "accord and satisfaction of all monies owed by the estate for any administrative rent expenses." The Trustee also stated: "[I]f you have any dispute with the amount, you must let me know by noon tomorrow." It is unclear whether Tenucp actually received this e-mail.[5]

On June 5, 2009, the Trustee sent checks to the landlords of the Equipment Locations, including Tenucp, along with a letter stating: "This payment is made if [sic] full accord and satisfaction of any and all administrative expense claims against the Bankruptcy Estates...." Furthermore, the Trustee stated: "All leases that were not assumed pursuant to the sale order have now been rejected." Tenucp's check had the following notation: "Accord and Satisfaction of administrative rent and

---

**3.** It appears that the motion to extend was based on the mistaken assumption that the deadline for the assumption or rejection of leases would expire on May 5, 2009, which would have been the applicable deadline prior to the BAPCPA amendments. Neither the parties nor the bankruptcy court recognized that the time for automatic rejection of non-assumed leases under § 365 was extended to 120 days under BAPCPA. *See* 11 U.S.C. § 365(d)(4). Thus, at the time the Trustee filed the motion to extend, the deadline for

the assumption or rejection of leases was actually July 13, 2009.

**4.** Tenucp was already paid use and occupancy expenses for the teach-out period in accordance with the Investment Agreement.

**5.** At the hearing, Tenucp's counsel stated that he was "uncertain" whether Tenucp's representative actually received the e-mail, as there was a spelling mistake in the e-mail address.

expenses for 4/4–5/23/09 (Universal)." According to the Trustee, Tenucp did not object to the proposed payment or otherwise express any dissatisfaction with the process or the amount paid for use and occupancy, and promptly cashed the check on June 9, 2009.

Three months later, Tenucp filed a request for payment of an administrative claim in the amount of $51,455, for amounts due and owing under the Lease for the period of March 13, 2009 through July 13, 2009.[6] The Trustee objected, arguing that the Trustee had reached an accord and satisfaction with Tenucp establishing an agreed upon payment for its administrative claim and, therefore, that Tenucp's claim should be denied. Alternatively, the Trustee requested that the bankruptcy court retroactively approve the rejection of the Lease as of June 4, 2009 (the extended deadline for assuming or rejecting leases, as set forth in the order granting the motion to extend), on an equitable basis, arguing that prior pleadings such as the operating motion, the sale motion, the settlement motion, and the motion to extend, clearly provided notice to Tenucp of the Trustee's intent to reject the Lease.

After a non-evidentiary hearing, the bankruptcy court concluded that Tenucp effectively had notice through "various pleadings"[7] that its rights under the Lease would end on May 23, 2009, and, therefore, that the Lease rejection was effective on May 23. The bankruptcy court stated: "As to the question of whether this landlord received notice, having reviewed the various pleadings in the case, I think this landlord knew exactly what was going on,

and that whatever rights there were would be terminated as of the May 23rd date." The bankruptcy court also held that if it was necessary to resort to equitable relief, it would do so, stating: "the landlord had notice; and if the landlord had notice, then equitably, it was the functional equivalent of rejection of the lease as of the May 23rd date, and I would so rule under [the leading First Circuit case] *Thinking Machines*." The bankruptcy court specifically declined to address the issue of the alleged accord and satisfaction, stating that it was not necessary in light of its other holding. The bankruptcy court entered the Order denying Tenucp's administrative claim, and Tenucp appealed.

### *JURISDICTION*

Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. See *Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American*

---

**6.** In a footnote, Tenucp asserted that because the Trustee had failed to either assume or reject the Lease, it was deemed rejected as a matter of law on July 13, 2009, citing

§ 365(d)(4). Exhibit A reflects that half of the claim amount arose in July, 2009.

**7.** The bankruptcy court did not identify the specific pleadings which provided the notice.

*Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy court's order allowing or disallowing a claim is final and, thus, appealable. *See Orsini Santos v. Lugo Mender (In re Orsini Santos)*, 349 B.R. 762, 768 (1st Cir. BAP 2006) (citing *Perry v. First Citizens Fed. Credit Union (In re Perry)*, 391 F.3d 282, 285 (1st Cir. 2004)).

### STANDARD OF REVIEW

■■ The Panel reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). "The bankruptcy court's determination of distributional priority is a conclusion of law subject to *de novo* review." *United States v. Yellin (In re Weinstein)*, 251 B.R. 174, 176 (1st Cir. BAP 2000), *rev'd on other grounds*, 272 F.3d 39 (1st Cir.2001).

■ The question of whether a bankruptcy court has the equitable authority to make its approval of a lease rejection retroactive is a legal question and, therefore, subject to *de novo* review. However, the Panel reviews the exercise of that equitable authority for abuse of discretion. *See Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 n. 8 (1st Cir. 1995) ("Appeals from a bankruptcy court's disposition of a request for retroactive relief will be reviewed only for abuse of discretion."). A bankruptcy court will have abused its discretion if it "ignored a material factor deserving of significant

weight, relied upon an improper factor or [made] a serious mistake in weighing proper factors." *Howard v. Lexington Invs., Inc.*, 284 F.3d 320, 323 (1st Cir.2002) (quoting *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988)).

### DISCUSSION

#### I. Statutory Framework

##### A. Unexpired Nonresidential Leases— § 365(d)(3) and (4)

■ Section 365(a) allows a trustee, subject to the court's approval, to assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). This provides the trustee with an opportunity to determine which of the pre-petition contracts and leases are beneficial to the estate and which should be assumed or rejected. *See Mason v. Official Comm. of Unsecured Creditors (In re FBI Distrib. Corp.)*, 330 F.3d 36, 42 (1st Cir.2003) (citing *Pub. Serv. Co. of N.H. v. N.H. Elec. Cooperative, Inc. (In re Pub. Serv. Co. of N.H.)*, 884 F.2d 11, 15–16 (1st Cir.1989)).

■ Section 365(d) imposes two obligations on a trustee with respect to unexpired nonresidential real property leases. First, § 365(d)(3) requires the trustee to perform timely all obligations required under the lease, particularly the obligation to pay rent at the contract rate until the lease is rejected, and gives the lessor an administrative claim for such amounts. *See* 11 U.S.C. § 365(d)(3);[8] *see also In re Vigo*, No. 08–06509, 2009 WL 4040145, *7, 2009 Bankr.LEXIS 3847, *23 (Bankr.

---

8. Section 365(d)(3) provides, in relevant part: The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property,

until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title....
11 U.S.C. § 365(d)(3).

D.P.R.2009). "This provision was added to the Code to 'alleviate the unique financial strains the Code placed upon the commercial lessor,' namely that the lessor was formerly unable to collect rent from the debtor-tenant while at the same time prevented from taking any action to re-let the premises." *Id.* (quoting *In re Iron Age Corp.*, 378 B.R. 419, 423 (Bankr.D.Mass. 2007)). Second, § 365(d)(4) requires the trustee to decide whether to assume or reject a lease within 120 days after the entry of the order for relief. *See* 11 U.S.C. § 365(d)(4); *see also In re Vigo,* 2009 WL 4040145, *7, 2009 Bankr.LEXIS 3847, at *24. If the trustee fails to act within 120 days, the lease is deemed rejected and the trustee must immediately surrender the leasehold to the lessor. *See* 11 U.S.C. § 365(d)(4)(A).[9] Bankruptcy courts may extend the 120-day period under certain conditions. *See* 11 U.S.C. § 365(d)(4)(B).

## B. Effective Date of Rejection

Because the effective date of rejection determines when the obligation to pay rent ceases (and, in turn, controls the time period for which the lessor is entitled to an administrative claim under § 365(d)(3)), it is important for courts to determine when a lease rejection takes effect. Courts addressing this issue have disagreed over whether court approval is required before the rejection may take effect, or whether rejection becomes effective upon the date the trustee actually rejects the lease, subject to later veto by the court. *See Thinking Machs.*, 67 F.3d at 1025 (discussing cases).

In *Thinking Machines*, the U.S. Court of Appeals for the First Circuit held that bankruptcy court approval is a condition precedent to the effectiveness of a trustee's rejection of a nonresidential lease under § 365(a) and, therefore, the date of court approval, not the motion filing date, generally controls the issue of a trustee's liability for administrative rent. *Id.* at 1025. The First Circuit noted that although the statutory language is ambiguous, the bankruptcy process and legislative history weigh in favor of requiring bankruptcy court approval prior to a lease rejection taking effect. *Id.* The First Circuit further ruled that a bankruptcy court can approve the rejection of a nonresidential lease retroactive to the motion filing date in an appropriate case. *Id.* at 1028 ("[N]othing in our holding today precludes a bankruptcy court, in an appropriate § 365(a) case, from approving a trustee's rejection of a nonresidential lease retroactive to the motion filing date."). Thus, *Thinking Machines* established a "single black-letter" rule: "[R]ejection under § 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively." *Id.* at 1029. Accordingly, "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation." Id. at 1028 (citations omitted).

## C. Procedure for Seeking Bankruptcy Court Approval

The Bankruptcy Code does not outline a specific procedure for seeking the bank-

---

9. Section 365(d)(4) provides, in relevant part: (d)(4)(A) ... [A]n unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected ... if the trustee does not assume or reject the unexpired lease by the earlier of-

    (i) the date that is 120 days after the date of the order for relief; or
    (ii) the date of the entry of an order confirming a plan.
11 U.S.C. § 365(d)(4)(A).

ruptcy court's permission to assume or reject an unexpired nonresidential lease, except to indicate that all such proceedings are governed by Bankruptcy Rules 6006 and 9014. Bankruptcy Rule 6006 implements the provisions of § 365 governing assumption and assignment of executory contracts and unexpired leases, and provides that Bankruptcy Rule 9014 governs motions to assume, reject, or assign executory contracts and unexpired leases, other than when doing so as part of a plan. Fed. R. Bankr.P. 6006.[10] Bankruptcy Rule 9014 in turn requires the filing of a motion with reasonable notice given to the party against whom relief is sought. Fed. R. Bankr.P. 9014.[11] Bankruptcy Rule 9013 requires that the motion state "with particularity the grounds therefor." Fed. R. Bankr.P. 9013.

■ In *Thinking Machines*, the First Circuit stated, in dicta, that read together, Bankruptcy Rules 6006 and 9014 "require a trustee who desires to reject a lease to file a *formal motion* to that effect." 67 F.3d at 1026 (emphasis added); *see also United States v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 624 (8th Cir.1994) ("Under § 365(a), rejection is 'subject to the court's approval,' and a debtor seeking such approval *must* proceed by *motion* upon reasonable notice and opportunity for hearing") (emphasis added). In a later decision, the First Circuit, following the *Thinking Machines'* rationale, noted that only the court can approve a trustee's

proposed assumption of a contract or lease. *See In re FBI Distrib.*, 330 F.3d at 45. "It is well settled ... that an executory contract cannot be assumed by the unilateral acts of the debtor-in-possession during the reorganization of the business ... Rather, the plain text of section 365 requires express approval by the court." *Id.; see also In re Thinking Machs.*, 67 F.3d at 1027 ("In adopting a requirement of court approval, Congress overruled precedent that allowed trustees to show by informal conduct that they had either assumed or rejected [executory contracts] ...."). As court approval is clearly required and informal conduct by trustees seeking to either assume or reject a lease is not sufficient, it follows that a formal motion requesting such approval is required. Thus, it is clear that a trustee or debtor-in-possession who wishes to assume or reject a lease must file a formal motion with the court.

■ Although the Bankruptcy Rules clearly require that an affected party be provided reasonable notice and opportunity to be heard regarding the disposition of its unexpired lease, nothing requires that the notice take the form of a specific motion entitled "motion to reject." The substance of the motion, not the form, governs. *See* 10 *Collier on Bankruptcy,* ¶ 6006.01[3][a] (15th ed.1998). For example, many asset sales include assignments of executory contracts and/or unexpired leases, and courts

---

**10.** Bankruptcy Rule 6006 provides, in relevant part:

> A proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014 .... notice of a motion ... shall be given to the other party to the contract or lease, to other parties in interest as the court may direct, and, except in a chapter 9 municipality case, to the United States trustee.

Fed. R. Bankr.P. 6006.

**11.** Bankruptcy Rule 9014 provides:

> In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.

Fed. R. Bankr.P. 9014.

generally allow a motion to sell to be treated as a motion to assume or assign those contracts and leases being sold as long as all substantive and notice requirements for assumption and assignment are strictly followed. *See, e.g., Chbat v. Tleel (In re Tleel),* 876 F.2d 769, 770–771 (9th Cir.1989). Other courts have held that approval of an agreement in a stipulation regarding the assumption or rejection of unexpired leases may be sufficient to put the other parties to those leases on notice. *See, e.g., Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.),* 979 F.2d 1358 (9th Cir.1992) (holding that court-approved stipulation satisfied notice requirement for assumption of contract); *Lindsey v. ITPE–NMU Welfare Plan (In re Harris Mgmt. Co., Inc.),* 791 F.2d 1412, 1414–15 (9th Cir.1986). Thus, in addition to assumption or rejection through a plan,[12] some courts also allow assumption through a sale or settlement motion; others do not. Generally, courts look to the specific language contained in the motion to determine whether it gives the affected party adequate notice of the proposed rejection or assumption.

For example, in *Gray v. W. Envtl. Servs. & Testing, Inc. (In re Dehon, Inc.),* 352 B.R. 546 (Bankr.D.Mass.2006), the bankruptcy court considered, among other things, whether the defendants' contracts had been assumed by the debtor through a sale motion. The defendants argued that the sale order operated as an order approving the assumption and assignment of their contracts, analogizing their case with *In re Tleel, supra. Id.* at 562. The bankruptcy court first questioned whether, under First Circuit precedent, assumption could ever happen through a sale motion, stating: "Under First Circuit case law, . . . by which this Court is bound, an assumption cannot be implied but requires court approval." *Id.* The bankruptcy court then distinguished the facts of *Tleel,* stating:

> Even assuming the result in *Tleel* could be made consistent with First Circuit case law, the facts of *Tleel* are readily distinguishable. There, the motion to sell involved only one contract, clearly identified in the motion and order, and all appropriate parties received notice of relevant motions and the court order authorizing the sale. 876 F.2d at 769–70. In contrast, the Sale Motion in this case did not identify any contracts to be assumed, and most certainly did not identify the Defendants' contracts. And, although the TIAX and ICF Agreements listed "contracts" as part of the assets to be transferred, neither TIAX nor ICF identified any of the Defendants' contracts as those to be assumed and assigned in conjunction with the Sale. Under these circumstances, the Sale Order itself could not be interpreted to have approved the assumption of the Defendants' contracts.

*Id.* at 562.

Another issue that has surfaced in case law is when a party uses so-called boilerplate language to assume or reject. Some courts have held that "boilerplate" language in a chapter 11 plan may provide adequate notice of the proposed rejection of an executory contract. *See, e.g., Dataprose, Inc. v. Amerivision Commc'ns, Inc. (In re Amerivision Commc'ns, Inc.),* 349 B.R. 718 (10th Cir. BAP 2006). In *In re Amerivision,* the chapter 11 plan con-

---

12. In a chapter 11 case, assumption or rejection may be accomplished by a specific motion or as part of the chapter 11 plan. *See* 11 U.S.C. § 1123(b)(2) (providing that a plan of reorganization "may, . . . subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section").

tained provisions rejecting all executory contracts and unexpired leases not otherwise listed on a separate assumption notice (to be filed before the voting deadline) or assumed via a separate motion.[13]  *Id.* at 720–21.  In accordance with this provision, the debtor served notice of intent to assume certain contracts that did not include the subject contract.  *Id.* at 721.  Dataprose, a contract vendor, argued that rejection of its contract was ineffective because the plan relied upon boilerplate language for the rejection and there was no notice that specifically listed the contracts to be rejected.  The panel concluded that the plan language provided adequate notice of the intended rejection by putting all parties to an executory contract on notice that absent specific assumption, the contract was rejected.  *Id.* at 723.  The panel further held that notice was adequate as both Dataprose and its counsel were served with the plan as well as a notice advising parties which specific contracts were to be assumed.  *Id.* at 723–24.

The U.S. Bankruptcy Appellate Panel of the Second Circuit reached a similar conclusion in *Charter Asset Corp. v. Victory Mkts., Inc. (In re Victory Mkts., Inc.)*, 221 B.R. 298 (2d Cir. BAP 1998).  In *In re Victory Markets*, the chapter 11 plan con-

tained a provision that explicitly rejected all executory contracts not listed on an assumption schedule attached to the plan. The panel held that the exclusion of an executory contract from the schedule effected a rejection of the contract at issue because the plan language was clear and the contract was not explicitly assumed. *Id.* at 304–305.

Other courts, however, have concluded that general boilerplate language does not automatically effect assumption or rejection, holding that the assumption or rejection will only be effective if the bankruptcy court actually considers the provision at issue.[14]  For example, in *In re Cole*, the bankruptcy court refused to give effect to a boilerplate assumption provision in a plan because the court "never authorized assumption nor had the opportunity to pass on the issue of whether assumption would benefit the estate."  189 B.R. 40, 46. As another court stated, "[t]o approve the rejection of an unidentified contract results in purely fictitious compliance with the Code." *In re Parkwood Realty*, 157 B.R. at 691.

■ Ultimately, the issue is one of notice.  As the *Amerivision* panel noted, the question is not only whether the language contained within the plan or motion is

---

13.  The plan provision in question provided, in relevant part:

[A]s of the effective date, the debtor shall be deemed to have rejected each executory contract to which it is a party, unless such contract or lease (a) was previously assumed by the debtor, (b) is set forth in a notice by NAM [the plan proponent], which shall be filed with the court not less than 10 days before the voting deadline, or (c) is the subject of a motion to assume filed on or before the confirmation date.

349 B.R. at 721.

14.  *See, e.g., In re Cole*, 189 B.R. 40, 46 (Bankr.S.D.N.Y.1995) (refusing to give effect to boilerplate assumption provision in plan); *see also Stumpf v. McGee (In re O'Connor)*,

258 F.3d 392, 401 (5th Cir.2001) (assumption cannot be effected by boilerplate language, and chapter 11 plan provision stating that contracts not rejected "will be assumed" did not result in assumption of contract not identified as one to be assumed); *In re Parkwood Realty Corp.*, 157 B.R. 687, 690–91 (Bankr. W.D.Wash.1993) (catch-all rejection language in plan not sufficient to effect a rejection of executory agreement because, although § 1123(b)(2) states that a plan may provide for rejection, that result "is specifically subject to § 365 and as such requires actual consideration by the court"); *Con'l Country Club, Inc. v. Burr (In re Cont'l Country Club Inc.)*, 114 B.R. 763, 766–67 (Bankr.M.D.Fla. 1990) (same).

sufficiently explicit, but whether the notice (service of the relevant documents) under the circumstances was adequate. 349 B.R. at 723. Thus, "the validity of any language depends upon notice and clarity and the overall information provided to the parties in interest." *Id.*

## II. Tenucp's Arguments

### A. Lack of Specific Motion to Reject the Lease

■ Tenucp argues that the bankruptcy court lacked authority to retroactively approve the rejection of the Lease absent a specific motion seeking to reject the Lease. As noted above, the Bankruptcy Rules and relevant case law clearly require that an affected party be provided reasonable notice and opportunity to be heard regarding the disposition of its unexpired lease. In addition, the Bankruptcy Rules require a trustee who desires to reject a lease to file a *formal motion* to that effect. However, no provision in the Bankruptcy Code or Rules requires the trustee to file a specific motion entitled "motion to reject." Therefore, the trustee can give notice of her intent to reject a lease in another kind of formal motion, such as a sale motion or a settlement motion.

The critical question is one of adequate notice-parties to the contract or lease must be given adequate notice of the proposed rejection or assumption.

> Notice is required not only to provide the non-debtor parties to executory contracts [or lease] an opportunity to raise objections to the proposed treatment of their contracts, but also to allow them to appropriately assert claims arising from rejection.... Failure to provide the appropriate notice may result in the court finding the assumption or rejection to be invalid.

**15.** Tenucp does not argue that it was not

*In re Dehon,* 352 B.R. at 559 (citations omitted).

### B. Notice

■ Tenucp argues that the bankruptcy court erred in finding that it had effective notice of the Trustee's intent to reject the Lease. The Trustee argues that prior pleadings such as the operating motion, the sale motion, the settlement motion, and the motion to extend (collectively, the "motions") show that Tenucp was notified that its rights under the Lease would terminate once the teach-out ended, the sale closed, and the buyer removed the purchased equipment from the Equipment Locations.[15] As discussed below, the Panel concludes that the motions, in the aggregate, provided sufficient notice to Tenucp of the Trustee's intent to reject the Lease.

First, through the operating motion, the Trustee provided notice that she intended to operate the Debtors' schools on a short-term basis and that the Debtors' equity holders would fund those operations in accordance with the proposed budget attached to the Investment Agreement. According to the proposed budget, the Trustee intended to use some of those funds to pay pro-rated use and occupancy charges for various school locations during the teach-out period. Tenucp's Universal City location was specifically identified on that list. Moreover, in arguing that a teach-out was in the best interests of the Debtors' estates, the Trustee stated that there were prospective buyers for the schools and that the teach-out would enhance the value of the estates and provide the Trustee with time to market the businesses on a going concern basis. Therefore, the operating motion provided the initial notice that the Trustee intended to negotiate a sale of the Debtors' businesses and assets, putting the

properly served with any of these motions.

landlords on notice that their leases might be impacted.

Second, in the sale and settlement motions, the Trustee identified those leases which were to be assumed and assigned to the buyer as part of the sale of the Debtors' assets, and those leaseholds which were designated as an Equipment Location, a leasehold not being assumed which contained equipment being purchased by the buyer. Tenucp's property was specifically identified as an Equipment Location on Schedule 1.1(r) of the APA, which was attached to the sale motion. The sale and settlement motions also provided that National City would fund the payment of use and occupancy charges with respect to the Equipment Locations from the date the teach-out ended until May 31, 2009 via a carve-out to the estates. After May 31, 2009, if the buyer had not removed its purchased equipment, it would become obligated to pay any use and occupancy until the equipment was removed. This information was also set forth in the APA and the settlement agreement. Therefore, the sale and settlement motions provided complementary notice to the landlords of the Equipment Locations that the Trustee in-tended to pay use and occupancy charges only through May 31, 2009.

Third, in the motion to extend, the Trustee requested the bankruptcy court to extend the deadline for assumption or rejection of leases, noting that under the terms of the sale motion, the buyer had until the Closing Date, as that term was defined in the APA, to designate leases for assumption and assignment. Therefore, in order to ensure adequate time to close, the Trustee requested an extension of the deadline to June 4, 2009, stating that all "[l]eases not designated for assumption will be deemed rejected as of the extended deadline date." The bankruptcy court granted the motion to extend in an endorsement order, and specifically ordered that the deadline for assumption or rejection was June 4, 2009. The motion to extend complies with the formal requirement of including in its caption the Trustee's intent to assume or reject unexpired leases of real property, as well as pleading with reasonable specificity in the "relief requested" and the prayer that any real estate lease not assumed or rejected would be deemed rejected by June 4, 2009.[16]

---

**16.** The "MOTION OF CHAPTER 13 TRUSTEE TO EXTEND DEADLINE TO ASSUME OR REJECT CERTAIN UNEXPIRED LEASES OF REAL PROPERTY" prayed to "[e]xtend the deadline for the Trustee to assume or reject the unexpired real estate leases (except those already rejected by the Trustee pursuant to prior order of this Court) to June 4, 2009; ..." The motion to extend included the following "relief requested:"

6. Pursuant to Section 365(d)(1), any unexpired real estate leases not already rejected by the Trustee will be deemed rejected on May 5, 2009.

7. Pursuant to the Sale Motion and related filings, either the prospective buyer, or any successful bidder, has until the Closing Date, as that term is defined under the Asset Purchase Agreement, to designate leases for assumption and assignment. Leases not desig-nated for assumption will be deemed rejected as of the extended deadline date.

8. The Closing Date is designated under the APA as May 15, 2009, but may be extended by the parties. In order to ensure adequate time to close, the Trustee requests that the current deadline to assume or reject real estate leases be extended for 30 days, to June 4, 2009.

9. The Trustee has served this Motion on (a) counsel for the Debtor, (b) the Landlords and their counsel, if known to the Trustee, (c) counsel for the Buyer, (d) the Office of the United States Trustee for the District of Massachusetts; and (e) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Trustee submits that, in light of the nature of the relief requested, no other further notice need be given.

In addition to the foregoing pleadings, the Trustee also provided Tenucp with an accounting of the remaining use and occupancy charges to be paid by the estate through the date the buyer removed the equipment from each of the Equipment Locations. The accounting set forth use and occupancy charges for Tenucp's Universal City location for the period of April 4, 2009 (the end of the teach-out period) through May 23, 2009 (the date the buyer removed the equipment from the premises) in the amount of $34,406.67. In the accompanying letter, the Trustee stated that the payments were in "full accord satisfaction of any and all administrative expense claims" and that "[a]ll leases that were not assumed pursuant to the sale order have now been rejected." The letter was accompanied by a check which bore a notation stating "accord & satisfaction of all administrative rent & expenses for 4/4–5/23/09 (Universal)." Tenucp admits that it received and promptly deposited the $34,406.67 payment.

Although none of the above motions or other documents specifically sought to reject Tenucp's Lease, the Panel concludes that Tenucp had sufficient notice of the Trustee's intent to reject the Lease as of June 4, 2009.[17]

## C. Retroactive Approval of Lease Rejection

After concluding that the bankruptcy court was not precluded as a matter of law from assigning a rejection date absent a specific motion to reject the Lease, and that Tenucp had sufficient notice of the Trustee's intent to reject the Lease, we must next turn to the question of whether the bankruptcy court's order authorizing the specific retroactive rejection date of May 23, 2009 constituted an abuse of discretion.

In addition to holding that Tenucp had notice of the Lease rejection through the various motions and court orders approving them, the bankruptcy court also held that if it were necessary to resort to equitable relief, it would do so. The bankruptcy court stated: "the landlord had notice; and if the landlord had notice, then equitably it was the functional equivalent of rejection of the lease as of the May 23rd date, and I would so rule under *Thinking Machines.*"

In *Thinking Machines*, the First Circuit held that equitable principles could be applied to reject a lease retroactive to the motion filing date, which was the date that the landlord was given notice of the intent to reject the lease. Tenucp argues that *Thinking Machines* requires the bankruptcy court to choose between two dates for rejection—the date of the filing of the motion to reject the lease or the date of the order authorizing rejection. However, many courts have refused to limit the bankruptcy court's equitable authority to establish a retroactive rejection date to one of those two dates. *See, e.g., In re O'Neil Theatres, Inc.,* 257 B.R. 806 (Bankr. E.D.La.2000) (making rejection date retroactive to date of filing bankruptcy petition, relying on fact that parties clearly acted to reject lease prior to filing date); *see also New Valley Corp. v. Corporate Property Assocs. (In re New Valley Corp.),* No. 98–982, 2000 WL 1251858, 2000 U.S. Dist. LEXIS 12663 (D.N.J. Aug. 31, 2000) (upholding bankruptcy court's decision to make the rejection effective date retroactive to the date in which the debtor had

---

17. The motion to extend, in light of the prior operating motion, as well as the sale and settlement motions, when considered in the aggregate, provided reasonable notice. However, the better practice is to specifically name the unexpired executory contract or lease in a formal motion to assume or reject.

vacated and the landlord had exercised control over the property); *Constant Ltd. Partnership v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 36 (S.D.N.Y.1995) (concluding that petition date was appropriate retroactive rejection date); *In re Amber's Stores, Inc.*, 193 B.R. 819, 826 (Bankr.N.D.Tex.1996) (concluding that the equities of the case warranted retroactive rejection of the lease to the petition date); *In re Joseph C. Spiess, Co.*, 145 B.R. 597, 606 (Bankr.N.D.Ill.1992) (authorizing retroactive rejection of a lease to the date that trustee takes affirmative steps to reject the lease).

Moreover, the *Thinking Machines* court specifically declined to set out specific guidelines as to when and how retroactive approval should be permitted, leaving this issue for bankruptcy courts to ascertain on a case-by-case basis. *See Thinking Machs.*, 67 F.3d at 1029, n. 9 ("Because no two cases are exactly alike, we eschew any attempt to spell out the range of circumstances that might justify the use of a bankruptcy court's equitable powers in this fashion. That exercise is best handled on a case-by-case basis."); *see also Pacific Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1075 (9th Cir.2004). As one court explained, § 365(d) "does not state that rejection cannot be applied retroactively, or that there are restrictions as to the manner in which the court can approve rejection." *In re Jamesway Corp.*, 179 B.R. at 37.

■ The facts in this case provided the bankruptcy court with a sound basis to exercise its equitable powers to order the rejection to operate retroactively. The motions in the aggregate provided Tenucp with sufficient and reasonable notice that the Trustee intended to reject the lease. In addition, the Trustee made available to Tenucp an accounting of the use and occupancy charges in the amount of $34,407.67,

as well as a check with a notation that the payment of said amount was in "accord and satisfaction" of all administrative rent and expenses. The cashing of the check by Tenucp, in light of the notice, the accounting, and the notation in the check, provide ample support for the court's decision to use its equitable powers. As a result, we conclude that the bankruptcy court had the equitable authority under *Thinking Machines* to establish a retroactive rejection date.

■ Next, we must determine whether the bankruptcy court abused its discretion in establishing the May 23 lease rejection date in light of the facts and circumstances of this case. It is significant to note that the May 23 date appeared in only two places: (1) the Trustee's June 3, 2009 e-mail to Tenucp's representative, which Tenucp may not have actually received; and (2) the accounting attached to the Trustee's June 5, 2009 letter to all of the Equipment Location landlords. The motion to extend (and the order granting the motion) set forth a June 4, 2009 deadline for the assumption or rejection of leases, and the other motions (operating, sale, and settlement) indicated that administrative rent would end by May 31, 2009. As a result, although the bankruptcy court was not limited in establishing a lease rejection date in the manner argued by Tenucp, the bankruptcy court abused its discretion by establishing a lease rejection date that does not appear in any of the pleadings which allegedly provided notice of the Trustee's intent to reject the Lease.

## D. Accord and Satisfaction

As noted above, the Trustee argued, as an alternative ground, that she had reached an accord and satisfaction with Tenucp establishing an agreed upon payment for its administrative claim and, therefore, that Tenucp's claim should be

denied. The bankruptcy court specifically declined to address the issue of the alleged accord and satisfaction, stating that it was not necessary in light of its other holding. As the bankruptcy court did not rule on the issue of accord and satisfaction, we do not need to address the issue here.

### CONCLUSION

For the reasons set forth above, we conclude that the Trustee's motions, such as the operating motion, the sale motion, the settlement motion and, most importantly, the motion to extend, and the orders granting the same, provided sufficient notice to Tenucp of the Trustee's intent to reject the Lease as of June 4, 2009. In addition, we conclude that the bankruptcy court had the equitable authority under *Thinking Machines* to establish a retroactive rejection date. However, the court abused its discretion by establishing May 23, 2009 as the effective date of rejection. As a result, we **AFFIRM IN PART, REVERSE IN PART, AND REMAND** to the bankruptcy court for proceedings consistent with this opinion to determine the effective date of the rejection. The bankruptcy court may also consider, in its discretion, whether the issue of accord and satisfaction is applicable to determining the date of rejection.